**EXHIBIT A**

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                              :
                              :
                              : 20-CV-01502 (BMC)
                              : 20-CV-01824 (BMC)
IN RE:  XP INC SECURITIES     :
LITIGATION,                   : United States Courthouse
                              : Brooklyn, New York
                              :
                              : Thursday, August 20, 2020
                              : 11:00 a.m.
                              :
- - - - - - - - - - - - - - - X


TRANSCRIPT OF:
CIVIL CAUSE FOR PRE-MOTION CONFERENCE VIA TELEPHONE
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES SENIOR DISTRICT JUDGE


A P P E A R A N C E S:

For the Plaintiffs:     THE ROSEN LAW FIRM, P.A.
Swayam Prakash,            101 Greenwood Avenue
Usha Prakash, and          Suite 440
4Fs Family, Inc.           Jenkintown, Pennsylvania 19046
                        BY: JACOB A. GOLDBERG, ESQ.
                            LEAH HAIFETZ-LI, ESQ.

                        BERNSTEIN LEIBHARD LLP
                           10 East 40th Street
                           28th Floor
                           New York, New York 10016
                        BY: LAURENCE JESSE HASSON, ESQ.
                            MATTHEW GUARNERO, ESQ.

For the Defendants:     DAVIS, POLK & WARDWELL
FCA XP Investments         450 Lexington Avenue
U.S. LLC,                  New York, New York 10017
Martin Emiliano         BY: ANTONIO JORGE PEREZ-MARQUES, ESQ.
Escobari Lifchitz
and Jared Wilson

For the Defendant:      MILBANK LLP
                           55 Hudson Yards
                           New York, New York 10001
                        BY: KINGDAR PRUSSIEN, ESQ.

Court Reporter:  VICTORIA A. TORRES BUTLER, CRR
225 Cadman Plaza East / Brooklyn, NY 11201
VButlerRPR@aol.com
Proceedings recorded by mechanical stenography; transcript produced by Computer-Aided Transcription.

Proceedings                                2

1          (Teleconference call initiated.)

2          (Judge BRIAN M. COGAN is on the call.)

3          THE COURT:  Good morning, this is Judge Cogan.

4          We have the unfortunate byproduct of AT&T, and I

5   have had this before, that there is some clicking on the line.

6   Let's see if we can work through it.  Hopefully, it will go

7   away.  If not, we are going to have to replace the call.

8          The case is In Re:  XP Securities Litigation

9   20-CV-1502 and 20-CV-1824.  This is a pre-motion conference on

10  the defendant's proposed motion to dismiss.

11         Let me know who is here and please, just give me the

12  people who are going to be speaking on behalf of the

13  plaintiff.

14         MR. GOLDBERG:  Good morning, Your Honor.

15         From the Rosen Law Firm, Jacob Goldberg on behalf of

16  plaintiffs Swayam and Usha Prakash, and 4Fs Family, Inc.

17         With me is my colleague Leah Heifetz-Li and my

18  colleagues from the Bernstein Liebhard firm, Laurence Hasson

19  and Matthew Guarnero.

20         THE COURT:  You have given me four people.  Are they

21  all going to the speaking?

22         MR. GOLDBERG:  No, Your Honor, only I, Jacob

23  Goldberg.  That's why I introduced my colleagues.

24         THE COURT:  Okay.

25         Who is here for the company?

Proceedings                                              3

1          MR. PEREZ-MARQUEZ:  Good morning, Your Honor.

2          This is Antonio Perez-Marquez from Davis Polk for

3    FCA XP Investments U.S. LLC and Messrs. Lifchitz and Wilson.

4          I also have a couple colleagues on the line, but I

5    will be doing the speaking.

6          THE COURT:  Okay.

7          Who is here for the underwriters?

8          MR. PRUSSIEN:  Good morning, Your Honor.

9          This is Kingdar Prussien from Milbank LLC

10   representing the underwriters.

11         THE COURT:  All right.  The way I run these

12   pre-motion conferences is generally, I see if there is any way

13   that we can simplify the motion.  I think this is not a case

14   where I am going to be able to talk the defendants out of

15   making it or talk the plaintiffs into withdrawing their

16   complaint, so I am not going to try for that, but I will see

17   if there is anything I can do to streamline the issues a bit.

18         Please note, though, that while I am going to

19   express to you some preliminary opinion on how I think the

20   motion may come out, I have not made up my mind on anything.

21   It happens all the time that, when I get the actual motion

22   papers, I come around 180 degrees from where I was at the

23   pre-motion conference.  So, no one be disturbed if I sound

24   like I have already made up my mind because I assure you, I

25   have not made up my mind on anything.  I am just probing to

Proceedings                                                          4

1    see where we can get to on the motion.

2           Having said that, I have a few questions for the

3    plaintiff.  I do want to remind everyone, I guess we have got

4    three speakers on the phone; please, state your name before

5    you start speaking so that the court reporter knows who is

6    talking.

7           The first thing I wanted to ask the plaintiff is,

8    the undisclosed civil cases that you are complaining about, if

9    I am reading the consolidated amended complaint right, you are

10   talking about 12 million to each and that, in my calculation,

11   comes to about two-and-a-half, two-and-three-quarter million

12   dollars?

13          Is that a material omission?

14          MR. GOLDBERG:  Your Honor, this is Jacob Goldberg on

15   behalf of the plaintiff.

16          Your Honor, the materiality of these undisclosed

17   cases and the increase from 69 million to 81 million *real*, the

18   materiality is self-explanatory because the registration

19   statement itself conveys the information, which means that the

20   registration conveys to investors that the number of civil

21   actions in which the company is engaged is material.

22          Within the context of that, Your Honor, the increase

23   the increase in *real* is material being 12 million of the --

24   instead of 69 it's 81, so it's 12 million -- even though it

25   may not be material to the net income of XP.

Proceedings                                                   5

1          However, Your Honor, as this Court knows, the

2    Second Circuit has said over and again the SEC clarified in

3    1999 through SAB -- Sam-alpha-bravo -- 99 that materiality is

4    both qualitative and quantitative.  If this company is

5    experiencing not 178 pieces of litigation but actually 450,

6    and the amount is materially higher, that may caution

7    investors about a risk that is different than the way they

8    understood it.

9          So, even as the Court may be correct in narrow sense

10   that quantitatively 12 million *real* could be immaterial, in

11   the context of what the registration is conveying to

12   investors, both the number of the, and the amount, is material

13   to what the registration statement says, which presupposes the

14   materiality of the information generally.

15          THE COURT:  I understand what you are saying and

16   certainly, I agree with you; it is quantity as well as

17   quality, but I am trying to look at this as I do in a

18   practical way from the perspective of an ordinary investor who

19   is looking at this.  And if it had been disclosed the way you

20   wanted -- 453 cases instead of 178 cases, giving an additional

21   $3 million, tops, of exposure -- would it really matter to an

22   investor?

23          MR. PEREZ-MARQUEZ:  Well.

24          THE COURT:  This is a billion-dollar offering,

25   right?

Proceedings                                    6

1           MR. GOLDBERG:  Yes, Your Honor.  But, if I may; the

2    entirety of the nine-month net income for this company is 695

3    million *real*.  Is 61 million versus 80 -- 69 million versus 81

4    million *real* material?

5           I think the problem with the Court's focus on

6    quantity is, no investor needs have changed their view of

7    investing in the company at a particular price.  That's not

8    the materiality standard.  You know, as the Court in the

9    Litwin versus Blackstone Group case 634 F.3d 706 stated about

10   materiality, it's not necessary to assert that the investor

11   would have acted differently if an accurate disclosure was

12   made.

13          So, Your Honor, I cannot tell you at this stage that

14   an investor would have changed her opinion and her investment

15   choice based on this information.  Rather, materiality, as the

16   Court notes, is inherently fact-finding.  What defendants are

17   asking you to do, they are not challenging the allegations of

18   the complaint; that there were materially more proceedings

19   than they listed in the registration statement.  They are not

20   claiming that it was only 69 and not 81 Brazilian *real*.  That

21   is not the issue.

22          What they are saying to you, as the Court has

23   discussed in Litwin is, is this immaterial as a matter of law.

24   And I think that you know, again, the Second Circuit in Litwin

25   reversing the District Court dismissal said when the District

Proceedings                                          7

1  Court is presented with a 12(b)(6) motion, a complaint may not

2  be properly dismissed on the ground that the alleged

3  misrepresentation or omission are not material unless they are

4  so obviously --

5           THE COURT REPORTER:  Counsel, I am sorry, I am

6  losing you with the clicking.

7           MR. GOLDBERG:  Let me go back, this is Jacob

8  Goldberg.

9           THE COURT:  Just your last sentence, Mr. Goldberg.

10          MR. GOLDBERG:  You've got it.  I will go halfway

11 through the quotation.

12          The Court says complaints, this expert says:  A

13 complaint may not properly be dismissed on the ground that the

14 alleged misstatements or omissions are not material unless

15 they are so obviously unimportant to a reasonable investor

16 that reasonable minds could not differ on the question of

17 their importance.

18          Your Honor, given that some of these are customer

19 complaints, some may be larger, some may be smaller, you know,

20 the lifeblood of this company is its customers.  Another part

21 of the lifeblood of this company is its independent financial

22 analysts -- advisors, I beg your pardon -- IFAs.  And because

23 of that, Your Honor, these reassert that one cannot say that a

24 failure to disclose accurately and materially accurately the

25 number of proceedings and the amount of prospective liability

Proceedings                                8

1   is immaterial as a matter of law at the pleading stage.

2          Defendants, they tried to show that at summary

3   judgment or to convince the finder of fact, ultimately, that

4   it is immaterial, but at the pleading stage, we believe it's

5   incorrect to all these disclosures about proceedings and

6   amounts immaterial as a matter of law.

7          THE COURT:  Everyone on the line can hear me?

8          MR. GOLDBERG:  Your Honor, this is Jacob Goldberg I

9   didn't catch your last comment, I am sorry.

10         THE COURT:  Okay, I can barely hear you now,

11  Mr. Goldberg.  Everybody, hang on a second.

12         Vicky, could you hear them okay?

13         THE COURT REPORTER:  It was a little difficult,

14  Your Honor, but I am getting it.  Thank you.

15         THE COURT:  All right, that is fine.

16         What happened was my speakerphone cut out for some

17  reason, it did not drop the call it just cut off the speaker,

18  so I heard nothing for about the last 30 seconds, but that is

19  okay Mr. Goldberg because I am going to get the transcript and

20  I will hear your last 30 seconds.

21         Let me ask you one thing.  Isn't it also a factor

22  that we are not talking about a cost item here, an actual

23  out-of-pocket nondisclosure expense.  We are talking about

24  loss, which anybody can file, and have not been determined,

25  and you are talking about an increased exposure, I assume,

Proceedings                                    9

1  based on the amount in the lawsuit which is not always a good

2  indication of the value of the lawsuit, as you well know.

3          So, does that not also decrease the likelihood of

4  materiality?

5          MR. GOLDBERG:  Your Honor, again, focusing on

6  quantity and not on quality --

7          THE COURT:  We are focusing on quality.  I am

8  focusing on quality.  I am saying the quality of an

9  undisclosed lawsuit is different than the quality of an

10 undisclosed out-of-pocket expense.  Isn't that?

11         MR. GOLDBERG:  Again, Jacob Goldberg.

12         The answer to your question, Your Honor, is:  Not

13 necessarily.

14         So, for example, begging the Court's pardon, I don't

15 know what the legal system is in Brazil for handling, for

16 example, a customer complaint or a labor complaint.  So, as

17 the Court knows, and as defendants would recognize, in this

18 country, a financial representative or a brokerage firm that

19 comes into conflict with one of its clients may find itself

20 before a FINRA arbitration and not in court.

21         And so, the question here, Your Honor, is yes, let's

22 assume it is so; that anyone can file litigation.  This

23 litigation against the company from customers or with respect

24 to labor or hypothetically from IFAs -- from independent

25 financial advisors -- if that litigation is increasing

Proceedings                                          10

1   materially, that may prompt an investor to understand in the

2   context of the risk warning about this is a customer-based

3   business, ours, XP's is the Schwab model; get the money in the

4   door.

5          If customers are dissatisfied with this product, the

6   amount of litigation qualitatively may show a weakness that

7   the number itself, the quantity, may not.

8          THE COURT:  Okay.  That makes sense to me.  I can

9   understand that.

10         Is there any suggestion in the complaint as to what

11  the percentage of disaffected customers or IFAs was that this

12  increase represented?  For example, if what was disclosed was

13  that .5 percent of customers are disaffected and the

14  nondisclosure made it 1.5 percent, then that still, to me,

15  seems more like a quality thing than a quantity thing.  I

16  mean, maybe it is quantity, but it still does not seem to

17  matter all that much.

18         MR. GOLDBERG:  Jacob Goldberg again, Your Honor.

19         Respectfully, if what the Court is saying is that a

20  reasonable investor would not care about a material increase

21  in the number of lawsuits in the context of the entire

22  registration statement about this company's operations, but

23  also in context of the actual disclosure which told investors

24  a number specific -- this isn't an opinion, there is no

25  judgment here, this is we XP face this many claims and the

Proceedings                                          11

1   impact we predict is X -- and because of that, Your Honor, it

2   is difficult to say at this stage, it is difficult to say that

3   a reasonable investor would not find that material

4   difference -- and the difference as viewed in the context of

5   the actual disclosure is material -- it's difficult to say

6   that a reasonable investor would not find it important and

7   adding to the total mix of information.

8               THE COURT:  Okay.

9               All right.  Does the company have anything that it

10  wants to add on this point?

11              MR. PEREZ-MARQUEZ:  This is Antonio Perez-Marquez,

12  Your Honor.

13              Just briefly, I would just like to address that

14  obviously, the dismissal based on lack of materiality, even at

15  the pleading stage, is well-accepted in the Second Circuit and

16  I would point the Court to the decisions of the Second Circuit

17  in the case of ECA versus JP Morgan, which is 553 F.3d 187 and

18  the decision of the Second Circuit in Hutchison versus

19  Deutsche Bank, 647 F.3d 479.

20              THE COURT:  I think that is common ground between

21  all of us, but I think what the plaintiff is saying is that I

22  cannot reach a determination of materiality based solely on

23  the language of the complaint.

24              MR. PEREZ-MARQUEZ:  Yes, Your Honor, if I may.  This

25  is Antonio Perez-Marquez again.

Proceedings                                          12

1          I believe with this complaint you can for two

2     reasons.  One is, the quantitative materiality is so far below

3     any applicable threshold.  As the Court focused on in its

4     first question, we are talking about a total alleged

5     undisclosed potential exposure of $3 million with a company

6     that has assets of 9.4 billion.  It is really a de minimus

7     quantitative amount.

8          As to qualitative materiality, they really haven't

9     said anything at all.  In the complaint they don't even allege

10    what the nature of these civil proceedings are, who the

11    alleged claimants are or what the suits concern.  They have

12    alleged nothing that would give a basis for the Court to

13    conclude that the suits are quantitatively -- I'm sorry --

14    qualitatively material either.  So, there actually are, even

15    on the face of the complaint, no basis for a finding that this

16    was a material omission.

17         And that is in the context of what are also robust

18    disclosures as to the fact that the company does face legal

19    proceedings, that it is part of legal and regular tort

20    proceedings and that those can be material; the fact that the

21    company disclosed the costs of any resolutions prior to the

22    IPO; the fact that the company disclosed reserves for

23    proceedings that had a probable risk of loss and an estimate

24    for possible losses in pending actions.

25         THE COURT:  You are right, there are a lot of

Proceedings                                          13

1    disclosures, but this case really is not about what was

2    properly disclosed; it is whether there were material

3    nondisclosures.  So I do not think it helps to say well, we

4    were really good on everything else even if we were a little

5    deficient here.  I think what you are saying is, even if we

6    were deficient here, we were deficient in such a small way, it

7    wouldn't affect an investor.  And I understand that.

8              Let me turn back that Mr. Goldberg for a second

9    because a want to ask him:  Is there any description in the

10   complaint, and I will admit to not having memorized it, that

11   the nature of these particular undisclosed lawsuits from a

12   quality perspective rather than a quantity perspective,

13   actually bore on the materiality?

14             In other words, there are certain kinds of lawsuits

15   that just do not matter because they are normal course of

16   business, but what you are suggesting to me in your remarks

17   before is that these particular plaintiffs kind of raised the

18   red flag or who have raised a red flag to an investor.  And I

19   would like to know, is there anything in the complaint that

20   describes the nature of the lawsuits as affecting the quality

21   of the nondisclosure.

22             MR. GOLDBERG:  Your Honor, if I may point the Court

23   to paragraph 1 -- I'm sorry, this is Jacob Goldberg.

24             THE COURT:  Yes.

25             MR. GOLDBERG:  To paragraph 135.  And that paragraph

Proceedings                                          14

1   lists a chart summarizing possible claims by nature, detailing

2   the amount of these claims or the potential amount of possible

3   exposure.

4            I refer the Court to footnote 2 regarding civil.

5            THE COURT:  Yes.

6            MR. GOLDBERG:  And it reads:  The group is defendant

7   in 178 civil claims by customers and investment agents mainly

8   related to portfolio management, risk rating, copyright and

9   contract termination.

10           Right there, Your Honor, those claims are the 178

11  that were actually upwards of 450 at the time of the IPO and

12  account for a majority, if not all, of the additional possible

13  exposure of 12 million *real*.

14           So, Your Honor, if I, as an investor, am reading

15  that, am I concerned that there are 154 percent greater number

16  of civil complaints by customers and IFAs, the company's

17  lifeblood?  I don't think that at the pleading stage, even as

18  a finder of fact, you will ultimately determine that no

19  reasonable investor would consider that as altering the total

20  mix of information.  I don't think that -- I beg your pardon,

21  Your Honor, you know that I am telling you what I think -- as

22  a matter of law, it is not immaterial at the pleading stage.

23           THE COURT:  Okay.  I get your point.

24           I guess the only thing is, the plaintiff not telling

25  me -- if it is asking me to draw the inference, which maybe I

Proceedings                                                          15

1   will -- that the nature of the additional undisclosed

2   complaints was the same type as those that were disclosed, and

3   the further inference that these are big deals when litigation

4   comes from these particular sources.  You are asking me to do

5   two of those and the only thing I am posing to you is, as to

6   the undisclosed complaints -- not the ones that are disclosed,

7   the undisclosed complaints -- I take it there is nothing else

8   in here that directly pleads what the source of those

9   additional complaints are.

10          MR. GOLDBERG:  Your Honor, Jacob Goldberg again.

11          I refer the Court to paragraph 137.

12          THE COURT:  Okay.

13          MR. GOLDBERG:  In which it says that:  XPI was

14   subject to 450, quote, civil proceedings, end quote, as of

15   December 31st, 2019.

16          Your Honor, that reference to civil proceedings,

17   when viewed in context of the cart, the complaint includes at

18   paragraph 135, which lists possible claims as tax, civil and

19   labor, indicates that the civil proceedings in paragraph 137

20   are in addition to the civil proceedings that the complaint

21   describes in paragraph 135.

22          And I will say this, Your Honor.  It interested me

23   in reading the defendant's pre-motion letter in which they

24   cite several cases under The Exchange Act with a heightened

25   pleading standard both under Federal Rule of Civil Procedure

1    9(b) and under the PSLRA.  Absent any description of how this

2    Court should evaluate this complaint, Your Honor, we expressly

3    pleaded in the complaint, our clients pleaded strict liability

4    and negligence and therefore, the Court will review, will

5    evaluate the sufficiency of this pleading under Rule 8(a);

6    meaning, it will accept all of the allegations as true, draw

7    all inferences -- all inferences -- reasonable inferences, I

8    beg your pardon -- in favor of plaintiff.  And the touchstone

9    here is the plausibility of relief.  Is it plausible, based on

10   this complaint, that those 453 civil proceedings are related

11   to the civil proceedings in paragraph 135?  It is implausible,

12   we submit, Your Honor, to find differently.

13          THE COURT:  Right.

14          MR. GOLDBERG:  Is it plausible that the increase in

15   customer and investment agent complaints is material?  It is

16   plausible, Your Honor.

17          THE COURT:  I understand.  Okay.

18          I have not heard from the underwriters.  Is there

19   anything nonrepetitive that needs to be added on this point?

20          MR. PRUSSIEN:  This is Kingdar Prussien, Your Honor.

21          Nothing on this point.

22          THE COURT:  Okay.

23          Let me move on then because I think I understand the

24   lay of the land on this.

25          One other question that I will put to you,

1   Mr. Goldberg.  The undisclosed investigation for the IPO did

2   not lead to anything.  How is that going to be material since

3   they were never charged?

4          The mere fact of an investigation is something that

5   would affect an investor's decision to invest?

6          MR. GOLDBERG:  Yes, Your Honor.

7          If, as the Court should find -- I beg your pardon --

8   if as the Court should find defendant had a duty to

9   disclose -- I am hearing a lot of clicking, Your Honor.  Can

10  you hear me?

11         THE COURT:  It is bad.  It is bad.  If you can speak

12  up a little to get louder than the clicking, it would help the

13  reporter, I am sure.

14         THE COURT REPORTER:  Thank you.

15         MR. GOLDBERG:  I will do my best.

16         Your Honor, first, Jacob Goldberg.

17         As the Court knows, we view the Securities Laws

18  ex-ante and not ex-post.  When the defendants state that this

19  was the greatest offering since brown bread and the stock was

20  trading at 47, that is completely irrelevant to the fact that

21  this fell $10 below the offer price, the IPO price, in March.

22         Your Honor, uncharged wrongdoing -- I am citing to

23  Virtus Investment Partners -- uncharged wrongdoing is

24  typically not subject to a duty to disclosure unless the

25  corporation puts the reasons for its success at issue, when a

Proceedings                                                    18

1   defendant makes a statement that can be understood by a

2   reasonable investor to deny that the illegal conduct is

3   occurring or when a defendant states an opinion that absent

4   disclosure misleads investors.

5           The company did put at issue in many places -- in

6   material places in the registration, the company put at issue

7   its success and it tied that success in material part to

8   independent financial advisors, IFAs.  So, for example,

9   Your Honor, at point 4 of the registration statement -- I'm

10  sorry, Your Honor.

11          THE COURT:  Yes, let's wait 30 seconds to see if it

12  lets up, but I do not think we can hear you through this type

13  of clicking.

14          (Pause in the proceedings.)

15          THE COURT:  It is a little better Mr. Goldberg, why

16  don't you try it now.

17          MR. GOLDBERG:  Sure.  So, Your Honor, again Jacob

18  Goldberg.

19          At page 24 of the registration statement, Exhibit A

20  to defendant's letter it says:  There's a risk of increasing

21  payments to IFAs because of competition.

22          On page 82 they tied gross margin contractions to

23  payments to IFAs.

24          On page 94 they tied payments to IFAs.

25          THE COURT:  Let me stop you because I accept this as

Proceedings                                          19

1    a basic assumption; that the IFAs are very important to this

2    company and a problem with IFAs is a big problem for the

3    company.  Let's start there.

4         If we start there, the fact that the Brazilian

5    authorities were looking into that and found nothing, you

6    know, you cannot make a problem when one is not there.  Just

7    because it is important does not mean it is a problem merely

8    because there was an investigation, right?  Investigation can

9    come from anywhere and it was found unsubstantiated.

10        MR. GOLDBERG:  Again, Your Honor, Jacob Goldberg.

11        Let me take you back to defendant's statements that

12   this stock was a robust success trading at $47 in August of

13   2020.  This offering was floated at $27 a share.  Investors

14   did not invest in this in December to just put $27 into the

15   company and get $27 out.  They assessed risk, Your Honor.

16   That's why we must look at this ex-ante.  The question is what

17   ultimately happened, Your Honor.  It is very clear that --

18        THE COURT REPORTER:  Counsel, I am sorry, I lost the

19   last sentence because of the clicking.

20        THE COURT:  Yes.

21        MR. GOLDBERG:  Jacob Goldberg again.  Please

22   interrupt me if you can't hear, I will try to speak more

23   loudly.

24        THE COURT:  Mr. Goldberg, I think I am going to call

25   the game because of rain.  We have tried to work through it

Proceedings                              20

1   and it is just not getting better, it is getting worse.  I

2   hate to do this, but I will direct everyone to hang up and

3   call back and let's see if we get a better connection then.

4           I really appreciate everyone trying to work through

5   this, but the court reporter cannot hear us and I am having

6   some difficulty that I think we have to try again.

7           So let's immediately hang up and re-put the call.

8   We will reconvene as soon as everyone is back on the line.

9   Sorry for the inconvenience, be with you shortly.

10          (Teleconference ended / teleconference restarted.)

11          THE COURT:  No, that is not better.

12          MR. GOLDBERG:  Your Honor, this is Jacob Goldberg.

13          THE COURT:  Yes.

14          MR. GOLDBERG:  When the call rang me in, there was

15  no static until about five, so I don't know whose phone it is,

16  and I hate to do this to my colleagues, but it is possible,

17  perhaps we should hang up and only those speaking should dial

18  in.

19          THE COURT:  I believe if I hang up, you are put into

20  a waiting room, but I am willing to try.  I am going to hang

21  up and you will let me know when I come back if, in fact, I

22  was the problem.  Let's find out.  Here I go.

23          (Judge Cogan exits and then rejoins the call.)

24          THE COURT:  I am back.  Is it me?

25          MR. GOLDBERG:  No, I don't think it's you.

```
                         Proceedings                    21

1            THE COURT:  Okay.

2            MR. PEREZ-MARQUEZ:  Your Honor, this is Antonio

3    Perez-Marquez.

4            Just briefly, if it would be helpful to the Court, I

5    would be happy to provide an alternative conference line.

6            THE COURT:  What if we try it and it is the same?  I

7    am not sure I could emotionally endure that.

8            All right, let's do it.  Hang on, let me get a pen

9    instead of a computer.  Let's have the number.

10           MR. PEREZ-MARQUEZ:  Great.

11           The number will be:  1-(877)-450-5999, and the code

12   will be 431-471.

13           THE COURT:  You will serve as the host of the call,

14   right?

15           MR. PEREZ-MARQUEZ:  Yes.

16           THE COURT:  Okay, let's everyone try that.  I will

17   talk to you in a minute.

18           MR. PEREZ-MARQUEZ:  Okay, thank you.

19           (Teleconference ended / teleconference restarted.)

20           THE COURT:  All right, this is Judge Cogan, I have

21   rejoined.  Anyone who is not on the phone, go ahead and tell

22   me.  That is a joke.

23           The clicking is gone.  All I can say is thanks to

24   Davis Polk for their much improved conference system, and

25   let's continue if you can recall where you were, Mr. Goldberg.
```

Proceedings                                    22

1          MR. GOLDBERG:   I can, Your Honor.

2          May I ask, just to ensure, is the court reporter on

3    the line?

4          Again, Jacob Goldberg, Your Honor.

5          Where I was, we were talking about the investigation

6    of uncharged wrongdoing and I urge the Court to compare the

7    Virtus Investment Partners case with the Lions Gate case that

8    defendants cite.  And in both cases they are speaking about a

9    Government investigation involving uncharged wrongdoing and

10   when duty requires disclosure of that uncharged wrongdoing.

11         And, Your Honor, the defendants state a principle

12   that is not incorrect.  XP is not required to accuse itself of

13   wrongdoing, certainly not.  But what both cases say is that

14   there is no general duty to disclose a Government

15   investigation -- and I am quoting now, Your Honor -- without

16   more.  That appears in both cases.

17         The Virtus Investment Partners case expands on the

18   three circumstances in which a company must disclose uncharged

19   wrongdoing and the first of those is when it puts its success

20   at issue but fails to disclose a material source or problem

21   with its success through an improper or, potentially -- it

22   must be an alleged improper or an illegal business practice.

23   In other words, Your Honor, a duty to disclose arises when the

24   investigation XP fails to disclose is materially related to

25   the reasons for its success.

Proceedings                              23

1          And as the Court noted before we left the AT&T call,

2    there is no question that IFAs are integral to this company's

3    business and therefore, because its success depends in

4    material part on IFAs, it can be required to disclose the

5    uncharged wrongdoing.  And again, Your Honor, not to put too

6    fine of a point on it, but the ultimate outcome of that

7    investigation, which post-dates the IPO, has nothing to do

8    with the duty to disclose the uncharged wrongdoing ex-ante at

9    the time of the IPO.

10          THE COURT:  But Mr. Goldberg, let me ask you this.

11   How often is a national regulatory agency going to initiate an

12   investigation that, if it found some violation, it would not

13   go to the heart of the company's success?  I am not saying it

14   never happens, but it seems to me that once you get the agency

15   involved, of course they are looking at something that would

16   be very significant to the company.  If it's a minor detail,

17   it is not worth their involvement.

18          MR. GOLDBERG:  Your Honor, let's talk about

19   materiality.  Again, this is Jacob Goldberg.

20          THE COURT:  All right.

21          MR. GOLDBERG:  I'm not sure that every SEC

22   investigation that every FINRA investigation, every

23   nongovernmental regulatory investigation is material to a

24   company's success, is material even to its financial result.

25          So, for example, Your Honor, if there is a Foreign

Proceedings                24

1   Corrupt Practices violation or an alleged Foreign Corrupt

2   Practices Act violation, in Wal-Mart's Mexican operations,

3   that may be immaterial to Wal-Mart.  The SEC may be

4   investigating.

5         If Wal-Mart has not put at issue the success of its

6   Mexican operations as being material to the success of the

7   consolidated entity, then that SEC investigation is merely

8   part of ongoing regulatory investigation.  And I believe there

9   was some problems with Wal-Mart's Mexican operations recently,

10  Your Honor, but that is a circumstance in which Wal-Mart would

11  not have to disclose the uncharged wrongdoing because it had

12  not created a tether between the Mexican operation and the

13  consolidated result.

14        THE COURT:  Okay.

15        MR. GOLDBERG:  In this case, however, Your Honor, XP

16  did.

17        THE COURT:  I understand.  I understand exactly what

18  you are saying.

19        All right.  Is there any response from the company?

20        MR. PEREZ-MARQUEZ:  Yes, Your Honor, this is Antonio

21  Perez-Marquez from David Polk.

22        Just briefly, I think there is a very important

23  point that plaintiffs are overlooking here, which is that this

24  argument pertains to the alleged failure to disclose uncharged

25  wrongdoing.  And as the Court has noted, what they are

Proceedings                                    25

1    actually making allegations about are allegations by a

2    competitor that were under investigation.

3        And I would point the Court to the case of Menaldi

4    versus Och-Ziff Capital Management at 164 F.Supp 3d 568 which

5    explains that when a securities fraud action rests on the

6    failure to disclose uncharged illegal conduct, the complaint

7    must state a plausible claim that the underlying conduct

8    occurred.

9        Here, there are no such allegations.  The only

10   allegations are that these accusations have been presented,

11   that the accusations were under investigation.  And it is the

12   alleged failure to disclose the accusations they are claiming

13   a material omission.  That does not suffice.  There is, as I

14   believe plaintiffs acknowledge, no freestanding obligation to

15   disclose uncharged, unadjudicated misconduct for a company to

16   accuse themselves of wrongdoing or to speculate about

17   potential adverse results of pending investigations.  That is

18   why a Government investigation without more does not trigger a

19   generalized duty to disclose.

20       Now, as to the idea that this becomes material

21   because the IFA network is material, that does not hold water

22   either.  The fact that the IFA network is itself important

23   does not mean that any accusation about the IFAs becomes

24   itself material.

25       And by analogy there is a similar observation made

Proceedings                                            26

1    of the Second Circuit's decision of ECA versus JP Morgan where

2    they noted that in that case plaintiffs conflated the

3    importance of a bank's reputation for integrity with the

4    materiality of a blank statement regarding its reputation.

5    Here, too, the two things are separate.  Yes, the IFA network

6    may be quite important, but that does not mean that any

7    accusation about the IFA network is itself material.

8           The case that plaintiffs rely on as well, their lead

9    case Virtus is also quite, quite different.  In that case the

10   issuer's portfolio manager had admitted to willfully violating

11   securities laws.  It wasn't a question of accusation, much

12   less accusations like these that have now been rejected.  And

13   even in that case, the Court held that the connection between

14   that conduct and the challenged statements was too tenuous

15   other than with respect to a specific statement concerning

16   that portfolio manager's performance.

17          And I would note also that here, again, any positive

18   statement about the IFA network were also coupled with

19   disclosures about the fact that XP was subject to competition

20   law and was subject to an agreement with CADE and that it

21   could be accused by its competitors of anti-competitive

22   conduct as well as other disclosures about risks to the IFA

23   network.  So it is not an unvarnished, positive story as

24   presented by plaintiffs.  Nothing more beyond these

25   disclosures is required by the securities law.

```
                        Proceedings                    27

 1          THE COURT:  All right.

 2          Is there anything additional from the underwriters?

 3          MR. PRUSSIEN:  Hi, Your Honor, this is Kindgar

 4   Prussien.

 5          Nothing additional and nonrepetitive from the

 6   underwriters.

 7          THE COURT:  Okay, thank you.

 8          The last point I wanted to cover.

 9          MR. GOLDBERG:  Your Honor?

10          THE COURT:  Yes.

11          MR. GOLDBERG:  With apologies this is Jacob

12   Goldberg.

13          THE COURT:  Yes, Mr. Goldberg.

14          MR. GOLDBERG:  Very briefly.

15          The Menaldi case is a PSLRA Exchange Act 10(b)(5)

16   case under heightened pleading standards.

17          Thank you, Your Honor.

18          THE COURT:  Okay.  I assure you all I will carefully

19   read the cases.

20          All right.  The last one I wanted to move on to, and

21   I will acknowledge to the defendants that I am kind of leaning

22   towards plaintiff on this one, is the failure to break out

23   these system failures as separate items and rather just

24   booking them or presenting them as an ordinary cost.  It does

25   seem to me that if there is some systemic kind of problem
```

Proceedings                    28

1    going on, that is something an investor might well want to

2    know.  And to camouflage it as treating it like just some of

3    the expenses of doing business, I am not sure that is a full

4    enough disclosure.

5           So, let me start with the company on that one.

6           MR. PEREZ-MARQUEZ:  Yes, Your Honor, I'm happy to

7    address that.  This is Antonio Perez-Marquez.

8           First of all, as the Court noted but it is an

9    important threshold point, there is no dispute that these

10   costs were all disclosed.  So, what they are talking about is

11   not something that would affect any bottom line financial

12   metric.  It's just a matter of the particular line items in

13   which the relative cost --

14          THE COURT:  Again, the quality versus quality issue.

15   These might be very significant costs, more so than ordinary

16   costs of business.

17          MR. PEREZ-MARQUEZ:  Understood, Your Honor, and I

18   will address that point as well.

19          So, but it is important to start by noting that this

20   isn't something is affecting any bottom line financial metric.

21   The issue is whether, as plaintiffs claim, they should have

22   been disclosed in a different line item.

23          Now, plaintiffs' position that the costs should have

24   been consolidated in a single line item is based entirely on

25   the allegation that they were recorded in a single line item

Proceedings                                29

1   by a subsidiary of XP called CCTVM, which is the broker in

2   Brazil.

3           THE COURT:  Right.

4           MR. PEREZ-MARQUEZ:  And plaintiffs allege that XP

5   should have disclosed those costs the same way that CCTVM did

6   and that it was materially misleading not to do so.

7           But what plaintiffs are overlooking, and this is

8   clear from the complaint and from materials incorporated

9   therein, is that CCTVM is subject to different accounting

10  standards.  It is governed by Brazilian central bank

11  principles not by IFRF.  So, of course, they're going to be

12  differences in the accounting treatment.  And the fact there's

13  such a difference does not reflect any kind of inconsistency.

14          This is one of the main crystal clear errors made in

15  the Winkler report on which plaintiffs base their complaint.

16  They were alleging, quote, unquote, inconsistencies based on

17  what were differences in accounting treatment between entities

18  that were subject to different accounting standards.  This was

19  pointed out on the very first page of the 6K that the company

20  filed responding to the Winkler group's allegation.  The

21  company noted that the report is full of errors along with

22  points that are immaterial and/or irrelevant.  For example,

23  the report demonstrates a lack of knowledge about the

24  different accounting rules -- Brazilian central bank standards

25  versus IFRF -- and uses inappropriate comparison.

Proceedings                                              30

1          That's what this is.  Their only basis to say these

2    are what are, in effect, disparate expenses actually should

3    have been treated as one uniform category; is that that's how

4    they were treated by a different entity under different

5    accounting standards.

6          THE COURT:  Well, I am not sure it is that simple

7    because I think -- tell me if I am wrong -- but I do not think

8    that compliance with the applicable accounting standards is

9    necessarily a defense to a securities fraud case or a

10   registration case.  It seems to me that you can comply, but if

11   you technically comply and yet the compliance omits something

12   that would be material to an investor, you still might be

13   exposed.

14         MR. PEREZ-MARQUEZ:  Well, that is where we get,

15   Your Honor, to the next flaw in their argument, which is that

16   they don't actually address what these costs were.  They talk

17   about operation errors, systems failures.  When the Court

18   reads the complaint carefully once again, as we know the Court

19   will, you will see there really isn't any substance here as to

20   what these were.  And so, the premise that there was some

21   monolithic category, some trend that was going undisclosed is

22   just not supported by the allegations of the complaint.

23         The other point to raise here is that the CCTVM

24   accounting treatment here, which they point to as effectively

25   the correct non-misleading disclosure of these issues, was

Proceedings                                          31

1   itself publicly available on XP's own website and there is no

2   duty to disclose what is publicly available.  We would point

3   the Court to the case of In Re:  Merrill Lynch at 272 F.Supp

4   2d 243 and there are cases from this district as well such as

5   the Keyspan case that make the same point.

6           So the premise of their position that there was some

7   sort of trend, some sort of pattern of errors that was going

8   undisclosed is not supported by the allegations of the

9   complaint.  It boils down to the notion that because of how

10  these costs were treated in the Brazilian entity CCTVM, they

11  should have been treated as a group, a different entity

12  subject to different accounting standards as well.

13          THE COURT:  Okay.

14          Mr. Prussien, before I hear from Mr. Goldberg, is

15  there anything you want to add to that?

16          MR. PRUSSIEN:  Your Honor, Kingdar Prussien.

17          No, nothing add to that.

18          THE COURT:  Okay.

19          Mr. Goldberg, doesn't this get down again to the --

20  well.  Let me ask you this before I ask the question I was

21  going to.

22          Do you have any more details that you would like to

23  include by way of an amended complaint?

24          MR. GOLDBERG:  Your Honor, if I may.

25          I would like to confer with my co-counsel and my

Proceedings                                                    32

1   colleagues about that.  So, I would appreciate the opportunity

2   not to say yes or no to that presently.

3          THE COURT:  Okay.

4          Frankly, the Second Circuit has made it clear that

5   even if I got you to say no, I could not stop you from doing

6   it later, although I have had a case where I did not stop it

7   from happening but I did make an adjustment in the ultimate

8   award of attorneys' fees based on having taken us through a

9   whole motion to dismiss for no reason only to get an amended

10  complaint.  So, I would ask you to carefully consider if

11  before we get the defendant's motion -- and that would have to

12  be pretty soon because the defendant's motion is due in less

13  than a month -- you might have a fuller complaint that you

14  want to present.

15         Go ahead, talk to your colleagues, decide if you

16  want to do that but if you do, please do not make the

17  defendants go to the trouble of drafting one of these six-inch

18  thick motions in a 12(b) context, okay?

19         MR. GOLDBERG:  Your Honor, Jacob Goldberg.

20         I acknowledge what the Court said and to my

21  knowledge today we do not, but if we do and my colleagues

22  inform me of that, we will not make defendants and the Court

23  waste time.  We commit to that.

24         THE COURT:  Okay.

25         MR. GOLDBERG:  And we hear the Court's instruction

Proceedings                                    33

1   clearly.

2           Your Honor, let me work backward.  Again, this is

3   Jacob Goldberg.  Let me work backwards.

4           The CCTVM accounting treatment is publicly

5   available.  I referred -- the Merrill Lynch case to which my

6   friend refers, if my memory serves me correctly that, too, is

7   a 10b aftermarket case.  I refer the Court to Exhibit A to the

8   defendant's pre-motion letter and it's at page 1.  Little i,

9   Your Honor, is the page.

10          THE COURT:  Yes.

11          MR. GOLDBERG:  We the selling shareholders, as the

12  registration conveys, have not authorized anyone to provide

13  any information other than that contained in this prospective.

14          If the Court views that paragraph, what they are

15  saying is that this is self-contained.  You, investor, don't

16  have to go and look for the CCTVM stuff and even if you did,

17  you shouldn't rely on that.  Rely on this and this only.

18          So then the question becomes what did they actually

19  say about these systems failures and order execution errors.

20  And what the CCTVM information conveys or uncovers or

21  discloses is that there are material costs, upwards of a

22  hundred million *real*, again, against 699 million in net

23  income.  There are these costs and they relate to what the

24  Court earlier called a potential systemic problem.

25          The accounting one system versus another is a red

VB        OCR        CRR

Proceedings                                                      34

1    herring.  The complaint reads that there are a hundred million

2    of these and that there is no way for an investor to assess

3    this potential systemic problem in view of how defendants

4    disclosed it.

5              Your Honor, I was privileged to argue the Setzer

6    versus Omega case before a panel of the Second Circuit last

7    November and there was very interesting colloquy which isn't

8    reflected in the opinion, but is reflected by the opinion.

9              THE COURT:  Did you win?

10             MR. GOLDBERG:  We did, Your Honor.  The Second

11   Circuit reversed.

12             THE COURT:  I just wanted to know.

13             MR. GOLDBERG:  Yes, we did, Your Honor, thank you.

14   Again, Jacob Goldberg.

15             In the Setzer case, Your Honor, Judge Leval --

16   effectively, the company lent money to operators and purchased

17   property that operators could operate as skilled nursing

18   facilities.  And one of their operators, their second largest

19   operator -- and the company is Reit -- the second largest

20   operator was in financial straights and the company never

21   disclosed it.  When they disclosed the financial straight,

22   they said, hey, you know, there's a little bit of a problem

23   but we think everything's great, but they omitted that the

24   only way the company continued to pay rent was through a loan

25   that Omega had made to the operator.

Proceedings                                    35

1        The problem, Your Honor, was -- and as Judge in

2    colloquy with Defense Counsel, Judge Leval said, wait a

3    minute, what you did was you transferred an obligation that

4    would have appeared on the income statement to a balance sheet

5    obligation; hiding in a general loan statement that

6    effectively they owed you money.  They owed you money either

7    way.

8        Your Honor, as Judge Leval points out the GAAP

9    treatment was not improper.  The failure to disclose the loan,

10    however, to inform investors of exactly what was going on was

11    improper, and that's the reason for the reversal.

12        There's another case, Your Honor, the Smith Barney

13    case, which is apposite, although not on all fours, 595 F.3d

14    86 where the Second Circuit lays out what is blackletter law,

15    the veracity of a statement or omission is measured not by its

16    literal truth, but by its ability to accurately inform rather

17    than mislead.

18        My friend is exactly correct, there is no

19    bottom-line impact.  But as the Court notes, there may be a

20    systemic one.  And in Smith Barney -- and again, Your Honor,

21    we're dealing with materiality here and not duty.  So, the

22    duty in Smith Barney was, there was an SEC regulation

23    requiring Smith Barney to disclose certain management fees

24    that they disclosed as other fees.  Well, that didn't impact

25    the bottom line at all, but they still weren't permitted, it

Proceedings                                        36

1   was still material, to know the difference between these fees.

2         And that should prompt the Court to deny a motion to

3   dismiss because what the complaint alleges with respect to

4   these expenses is that systems failures and order execution

5   errors are important and material -- I beg your pardon -- and

6   investors had a right to see what was going on there.  And

7   their failure to disclose, either through a separate line item

8   or in violation of international financial reporting standard

9   one, to provide some description that enabled investors to

10  understand what those costs were, that they existed and the

11  material amount.  That is something that they were duty-bound

12  to disclose and the underlying information is qualitatively

13  material.

14        THE COURT:  Okay.  I understand what you are saying.

15        It does seem to me, though, that a lot of the

16  substance of the complaint that you just gave me in your last

17  comment is kind of general and does not really tell me; it

18  suggests that there is a systemic problem but it does not

19  really tell me what it is or that it is systemic.  The

20  question is, is your claim just possible?  It is certainly

21  possible.  But is it plausible?  I am not sure.  That is why I

22  have asked you and you have agreed to think about whether

23  there is any more to it that you want to contribute.

24        But I do want to emphasize the point that I made at

25  the outset, which is; nothing that I say today should be

Proceedings                                        37

1   viewed as indicative of the way I am certainly going to come

2   out.  Please, keep that in mind.

3           Okay, there are only a couple of things I want to

4   cover.  We have a schedule in place on the assumption that

5   plaintiffs do not file an amended complaint or a second

6   amended complaint and Mr. Goldberg is going to let us know

7   about that shortly.

8           Is everybody okay on the schedule that we are

9   talking about?  Does everyone know what I am referring to?

10          MR. GOLDBERG:  Jacob Goldberg on behalf of

11  plaintiffs.

12          We are okay with the schedule.

13          THE COURT:  Okay.

14          Defendants, too?

15          MR. PEREZ-MARQUEZ:  Yes, Your Honor.

16          Antonio Perez-Marquez for the XP defendants.

17          THE COURT:  Okay.

18          MR. PRUSSIEN:  We are as well.

19          THE COURT:  Good.

20          I do not like to get off a call like this if there

21  is anything else that anyone needs to say.  I will hear from

22  you, Mr. Goldberg, first, and then I will hear from defendants

23  last because it is their motion.

24          MR. GOLDBERG:  Your Honor, I have little to add.  I

25  have been unduly prolific during this call.

Proceedings                                      38

1        I would ask the Court to re-read the complaint with

2   respect to the Winkler report and the company's reaction to

3   that.  From my perspective the complaint pleads more than

4   plausibly that we're not arguing about whether these system

5   failures and order execution error costs are really system

6   errors and order execution costs.  We are only talking about

7   how they disclosed or -- I beg your pardon -- how the

8   registration statement disclosed or failed to disclose those

9   costs.

10       But again, Your Honor, with the Court's comments in

11  mind, I will confer with my colleagues and endeavor by a week

12  from tomorrow to alert defendants whether we intend to amend.

13       THE COURT:  That would be good.

14       All right, is there anything further from

15  defendants?

16       MR. PEREZ-MARQUEZ:  Just two points, Your Honor, if

17  I may.  It's Antonio Perez-Marquez for the XP defendants.

18       First, on this issue we were just discussing about

19  the operating costs.  I believe that the point that was made

20  by the Court in its most recent questions is exactly right;

21  that this characterization being advanced by plaintiffs that

22  this is a systemic issue is a possibility but not a conclusion

23  that is plausibly supported by any allegations or facts pled

24  in the complaint.  Its just not there.  It is just an

25  assumption that is being made, not something that has been

Proceedings                                        39

1   supported by the pled facts.

2           And so, where we end up is in this situation that is

3   the same as in the case of <u>In Re:  China Valve Technologies</u>

4   <u>Securities Litigation</u> at 979 F.Supp 2d 395 in which the Court

5   dismissed securities claim where, quote, plaintiffs failed to

6   allege any plausible basis for believing the discrepancies

7   were due to anything other than different reporting standards.

8   In that case between Chinese and U.S. reporting standards.

9   That is a key point on that set of allegations.

10          The second point that I wanted to raise just briefly

11  is that we haven't touched on the 12(a)(2) claim.  And I did

12  want to flag that plaintiffs' response to our pre-motion

13  letter did not address what we had identified as the fatal

14  flaw of that claim, which is that these plaintiffs' own

15  certifications say that they did not purchase from the IPO and

16  12(a)(2) does not apply to aftermarket purchases.  So, there

17  is a fatal flaw there that requires dismissal of that claim as

18  well.

19          I believe that Mr. Prussien may have wanted to be

20  heard on that claim as well, but I will defer to him on that.

21          THE COURT:  Okay.

22          I did not ask about that only because I think I have

23  got a pretty firm handle on the law and the application of the

24  law to the complaint, but if you want to be heard on standing

25  on the 12(a)(2) Mr. Prussien, I am glad to hear from you.

Proceedings 40

1      MR. PRUSSIEN:  Thank you, Your Honor.  This is
2  Mr. Prussien.
3      I take it from the Judge's statement that Your Honor
4  is familiar with the state of the law here and very familiar
5  with what the Supreme Court has decided and what the
6  Second Circuit has continuously followed.  I am okay to rely
7  on what we initially stated in the letter and on the papers to
8  follow.
9      THE COURT:  All right.
10      Thank you all for calling in.  Special thanks to
11  Davis Polk for their contribution of their tele-con network.
12  I assure everyone that will get them no special consideration
13  whatsoever, but I do appreciate it.
14      All right, we will about in be in touch.  Thank you,
15  everyone.
16      ALL:  Thank you, Your Honor.
17      (Matter concluded.)
18
19                      oooOooo
20
21
22
23
24
25

VB    OCR    CRR

*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*
<u>/s/ Victoria A. Torres Butler</u>  <u>August 31, 2020</u>

## $

**$10** [1] - 17:21
**$27** [3] - 19:13, 19:14, 19:15
**$47** [1] - 19:12

## 1

**1** [2] - 13:23, 33:8
**1-(877)-450-5999** [1] - 21:11
**1.5** [1] - 10:14
**10** [1] - 1:17
**10(b)(5** [1] - 27:15
**10001** [1] - 1:25
**10016** [1] - 1:18
**10017** [1] - 1:21
**101** [1] - 1:14
**10b** [1] - 33:7
**11:00** [1] - 1:7
**12** [5] - 4:10, 4:23, 4:24, 5:10, 14:13
**12(a)(2** [3] - 39:11, 39:16, 39:25
**12(b** [1] - 32:18
**12(b)(6** [1] - 7:1
**135** [4] - 13:25, 15:18, 15:21, 16:11
**137** [2] - 15:11, 15:19
**154** [1] - 14:15
**164** [1] - 25:4
**178** [4] - 5:5, 5:20, 14:7, 14:10
**180** [1] - 3:22
**187** [1] - 11:17
**19046** [1] - 1:15
**1999** [1] - 5:3

## 2

**2** [1] - 14:4
**20** [1] - 1:6
**20-CV-01502** [1] - 1:3
**20-CV-01824** [1] - 1:4
**20-CV-1502** [1] - 2:9
**20-CV-1824** [1] - 2:9
**2019** [1] - 15:15
**2020** [2] - 1:6, 19:13
**24** [1] - 18:19
**243** [1] - 31:4
**272** [1] - 31:3
**28th** [1] - 1:18
**2d** [2] - 31:4, 39:4

## 3

**3** [2] - 5:21, 12:5
**30** [3] - 8:18, 8:20, 18:11
**31st** [1] - 15:15
**395** [1] - 39:4
**3d** [1] - 25:4

## 4

**4** [1] - 18:9

## 40th

**40th** [1] - 1:17
**431-471** [1] - 21:12
**440** [1] - 1:14
**450** [4] - 1:21, 5:5, 14:11, 15:14
**453** [2] - 5:20, 16:10
**47** [1] - 17:20
**479** [1] - 11:19
**4Fs** [2] - 1:15, 2:16

## 5

**5** [1] - 10:13
**55** [1] - 1:24
**553** [1] - 11:17
**568** [1] - 25:4
**595** [1] - 35:13

## 6

**61** [1] - 6:3
**634** [1] - 6:9
**647** [1] - 11:19
**69** [4] - 4:17, 4:24, 6:3, 6:20
**695** [1] - 6:2
**699** [1] - 33:22
**6K** [1] - 29:19

## 7

**706** [1] - 6:9

## 8

**8(a** [1] - 16:5
**80** [1] - 6:3
**81** [4] - 4:17, 4:24, 6:3, 6:20
**82** [1] - 18:22
**86** [1] - 35:14

## 9

**9(b** [1] - 16:1
**9.4** [1] - 12:6
**94** [1] - 18:24
**979** [1] - 39:4
**99** [1] - 5:3

## A

**a.m** [1] - 1:7
**ability** [1] - 35:16
**able** [1] - 3:14
**absent** [2] - 16:1, 18:3
**accept** [2] - 16:6, 18:25
**accepted** [1] - 11:15
**account** [1] - 14:12
**accounting** [11] - 29:9, 29:12, 29:17, 29:18, 29:24, 30:5, 30:8, 30:24, 31:12, 33:4, 33:25
**accurate** [1] - 6:11

**accurately** [3] - 7:24, 35:16
**accusation** [3] - 25:23, 26:7, 26:11
**accusations** [4] - 25:10, 25:11, 25:12, 26:12
**accuse** [2] - 22:12, 25:16
**accused** [1] - 26:21
**acknowledge** [3] - 25:14, 27:21, 32:20
**Act** [3] - 15:24, 24:2, 27:15
**acted** [1] - 6:11
**action** [1] - 25:5
**actions** [2] - 4:21, 12:24
**actual** [4] - 3:21, 8:22, 10:23, 11:5
**add** [4] - 11:10, 31:15, 31:17, 37:24
**added** [1] - 16:19
**adding** [1] - 11:7
**addition** [1] - 15:20
**additional** [6] - 5:20, 14:12, 15:1, 15:9, 27:2, 27:5
**address** [5] - 11:13, 28:7, 28:18, 30:16, 39:13
**adjustment** [1] - 32:7
**admit** [1] - 13:10
**admitted** [1] - 26:10
**advanced** [1] - 38:21
**adverse** [1] - 25:17
**advisors** [3] - 7:22, 9:25, 18:8
**affect** [3] - 13:7, 17:5, 28:11
**affecting** [2] - 13:20, 28:20
**aftermarket** [2] - 33:7, 39:16
**agency** [2] - 23:11, 23:14
**agent** [1] - 16:15
**agents** [1] - 14:7
**agree** [1] - 5:16
**agreed** [1] - 36:22
**agreement** [1] - 26:20
**ahead** [2] - 21:21, 32:15
**alert** [1] - 38:12
**ALL** [1] - 40:16
**allegation** [2] - 28:25, 29:20
**allegations** [10] - 6:17, 16:6, 25:1, 25:9, 25:10, 30:22, 31:8, 38:23, 39:9
**allege** [3] - 12:9, 29:4, 39:6
**alleged** [9] - 7:2, 7:14, 12:4, 12:11, 12:12, 12:22, 24:1, 24:24, 25:12
**alleges** [1] - 36:3
**alleging** [1] - 29:16
**alpha** [1] - 5:3
**altering** [1] - 14:19
**alternative** [1] - 21:5
**amend** [1] - 38:12
**amended** [5] - 4:9, 31:23, 32:9, 37:5, 37:6
**amount** [9] - 5:6, 5:12, 7:25, 9:1, 10:6, 12:7, 14:2, 36:11
**amounts** [1] - 8:6
**analogy** [1] - 25:25
**analysts** [1] - 7:22
**answer** [1] - 9:12
**ante** [3] - 17:18, 19:16, 23:8

**anti** [1] - 26:21
**anti-competitive** [1] - 26:21
**Antonio** [8] - 3:2, 11:11, 11:25, 21:2, 24:20, 28:7, 37:16, 38:17
**apologies** [1] - 27:11
**appeared** [1] - 35:4
**applicable** [2] - 12:3, 30:8
**application** [1] - 39:23
**apply** [1] - 39:16
**apposite** [1] - 35:13
**appreciate** [3] - 20:4, 32:1, 40:13
**arbitration** [1] - 9:20
**argue** [1] - 34:5
**arguing** [1] - 38:4
**argument** [2] - 24:24, 30:15
**arises** [1] - 22:23
**assert** [1] - 6:10
**assess** [1] - 34:2
**assessed** [1] - 19:15
**assets** [1] - 12:6
**assume** [2] - 8:25, 9:22
**assumption** [3] - 19:1, 37:4, 38:25
**assure** [3] - 3:24, 27:18, 40:12
**AT&T** [2] - 2:4, 23:1
**attorneys'** [1] - 32:8
**August** [2] - 1:6, 19:12
**authorities** [1] - 19:5
**authorized** [1] - 33:12
**available** [3] - 31:1, 31:2, 33:5
**Avenue** [2] - 1:14, 1:21
**award** [1] - 32:8

## B

**backward** [1] - 33:2
**backwards** [1] - 33:3
**bad** [2] - 17:11
**balance** [1] - 35:4
**Bank** [1] - 11:19
**bank** [2] - 29:10, 29:24
**bank's** [1] - 26:3
**barely** [1] - 8:10
**Barney** [4] - 35:12, 35:20, 35:22, 35:23
**base** [1] - 29:15
**based** [9] - 6:15, 9:1, 10:2, 11:14, 11:22, 16:9, 28:24, 29:16, 32:8
**basic** [1] - 19:1
**basis** [4] - 12:12, 12:15, 30:1, 39:6
**becomes** [3] - 25:20, 25:23, 33:18
**BEFORE** [1] - 1:10
**beg** [6] - 7:22, 14:20, 16:8, 17:7, 36:5, 38:7
**begging** [1] - 9:14
**behalf** [4] - 2:12, 2:15, 4:15, 37:10
**below** [2] - 12:2, 17:21
**BERNSTEIN** [1] - 1:17
**Bernstein** [1] - 2:18
**best** [1] - 17:15
**better** [4] - 18:15, 20:1, 20:3, 20:11

**between** [6] - 11:20, 24:12, 26:13, 29:17, 36:1, 39:8
**beyond** [1] - 26:24
**big** [2] - 15:3, 19:2
**billion** [2] - 5:24, 12:6
**billion-dollar** [1] - 5:24
**bit** [3] - 3:17, 34:22
**blackletter** [1] - 35:14
**Blackstone** [1] - 6:9
**blank** [1] - 26:4
**BMC** [2] - 1:3, 1:4
**boils** [1] - 31:9
**booking** [1] - 27:24
**bore** [1] - 13:13
**bottom** [4] - 28:11, 28:20, 35:19, 35:25
**bottom-line** [1] - 35:19
**bound** [1] - 36:11
**bravo** [1] - 5:3
**Brazil** [2] - 9:15, 29:2
**Brazilian** [5] - 6:20, 19:4, 29:10, 29:24, 31:10
**bread** [1] - 17:19
**break** [1] - 27:22
**BRIAN** [2] - 1:10, 2:2
**briefly** [5] - 11:13, 21:4, 24:22, 27:14, 39:10
**broker** [1] - 29:1
**brokerage** [1] - 9:18
**Brooklyn** [1] - 1:5
**brown** [1] - 17:19
**business** [6] - 10:3, 13:16, 22:22, 23:3, 28:3, 28:16
**BY** [2] - 1:15, 1:19
**BY:ANTONIO** [1] - 1:22
**BY:KINGDAR** [1] - 1:25
**byproduct** [1] - 2:4

## C

**CADE** [1] - 26:20
**calculation** [1] - 4:10
**camouflage** [1] - 28:2
**cannot** [5] - 6:13, 7:23, 11:22, 19:6, 20:5
**Capital** [1] - 25:4
**care** [1] - 10:20
**carefully** [3] - 27:18, 30:18, 32:10
**cart** [1] - 15:17
**case** [30] - 2:8, 3:13, 6:9, 11:17, 13:1, 22:7, 22:17, 24:15, 25:3, 26:2, 26:8, 26:9, 26:13, 27:15, 27:16, 30:9, 30:10, 31:3, 31:5, 32:6, 33:5, 33:7, 34:6, 34:15, 35:12, 35:13, 39:3, 39:8
**cases** [10] - 4:8, 4:17, 5:20, 15:24, 22:8, 22:13, 22:16, 27:19, 31:4
**catch** [1] - 8:9
**category** [2] - 30:3, 30:21
**CAUSE** [1] - 1:10
**caution** [1] - 5:6

**CCTVM** [8] - 29:1, 29:5, 29:9, 30:23, 31:10, 33:4, 33:16, 33:20
**central** [2] - 29:10, 29:24
**certain** [2] - 13:14, 35:23
**certainly** [4] - 5:16, 22:13, 36:20, 37:1
**certifications** [1] - 39:15
**challenged** [1] - 26:14
**challenging** [1] - 6:17
**changed** [2] - 6:6, 6:14
**characterization** [1] - 38:21
**charged** [1] - 17:3
**chart** [1] - 14:1
**China** [1] - 39:3
**Chinese** [1] - 39:8
**choice** [1] - 6:15
**Circuit** [10] - 5:2, 6:24, 11:15, 11:16, 11:18, 32:4, 34:6, 34:11, 35:14, 40:6
**Circuit's** [1] - 26:1
**circumstance** [1] - 24:10
**circumstances** [1] - 22:18
**cite** [2] - 15:24, 22:8
**citing** [1] - 17:22
**civil** [13] - 4:8, 4:20, 12:10, 14:4, 14:7, 14:16, 15:14, 15:16, 15:18, 15:19, 15:20, 16:10, 16:11
**Civil** [1] - 15:25
**CIVIL** [1] - 1:10
**claim** [8] - 25:7, 28:21, 36:20, 39:5, 39:11, 39:14, 39:17, 39:20
**claimants** [1] - 12:11
**claiming** [2] - 6:20, 25:12
**claims** [6] - 10:25, 14:1, 14:2, 14:7, 14:10, 15:18
**clarified** [1] - 5:2
**clear** [4] - 19:17, 29:8, 29:14, 32:4
**clearly** [1] - 33:1
**clicking** [7] - 2:5, 7:6, 17:9, 17:12, 18:13, 19:19, 21:23
**clients** [2] - 9:19, 16:3
**co** [1] - 31:25
**co-counsel** [1] - 31:25
**code** [1] - 21:11
**Cogan** [3] - 2:3, 20:23, 21:20
**COGAN** [2] - 1:10, 2:2
**colleague** [1] - 2:17
**colleagues** [8] - 2:18, 2:23, 3:4, 20:16, 32:1, 32:15, 32:21, 38:11
**colloquy** [2] - 34:7, 35:2
**comment** [2] - 8:9, 36:17
**comments** [1] - 38:10
**commit** [1] - 32:23
**common** [1] - 11:20
**company** [29] - 2:25, 4:21, 5:4, 6:2, 6:7, 7:20, 7:21, 9:23, 11:9, 12:5, 12:18, 12:21, 12:22, 18:5, 18:6, 19:2, 19:3, 19:15, 22:18, 23:16, 24:19, 25:15, 28:5, 29:19, 29:21, 34:16, 34:19, 34:20, 34:24
**company's** [6] - 10:22, 14:16, 23:2,

23:13, 23:24, 38:2
**compare** [1] - 22:6
**comparison** [1] - 29:25
**competition** [2] - 18:21, 26:19
**competitive** [1] - 26:21
**competitor** [1] - 25:2
**competitors** [1] - 26:21
**complaining** [1] - 4:8
**complaint** [37] - 3:16, 4:9, 6:18, 7:1, 7:13, 9:16, 10:10, 11:23, 12:1, 12:9, 12:15, 13:10, 13:19, 15:17, 15:20, 16:2, 16:3, 16:10, 25:6, 29:8, 29:15, 30:18, 30:22, 31:9, 31:23, 32:10, 32:13, 34:1, 36:3, 36:16, 37:5, 37:6, 38:1, 38:3, 38:24, 39:24
**complaints** [8] - 7:12, 7:19, 14:16, 15:2, 15:6, 15:7, 15:9, 16:15
**completely** [1] - 17:20
**compliance** [2] - 30:8, 30:11
**comply** [2] - 30:10, 30:11
**computer** [1] - 21:9
**con** [1] - 40:11
**concern** [1] - 12:11
**concerned** [1] - 14:15
**concerning** [1] - 26:15
**conclude** [1] - 12:13
**concluded** [1] - 40:17
**conclusion** [1] - 38:22
**conduct** [5] - 18:2, 25:6, 25:7, 26:14, 26:22
**confer** [2] - 31:25, 38:11
**conference** [4] - 2:9, 3:23, 21:5, 21:24
**CONFERENCE** [1] - 1:10
**conferences** [1] - 3:12
**conflated** [1] - 26:2
**conflict** [1] - 9:19
**connection** [2] - 20:3, 26:13
**consider** [2] - 14:19, 32:10
**consideration** [1] - 40:12
**consolidated** [4] - 4:9, 24:7, 24:13, 28:24
**contained** [2] - 33:13, 33:15
**context** [9] - 4:22, 5:11, 10:2, 10:21, 10:23, 11:4, 12:17, 15:17, 32:18
**continue** [1] - 21:25
**continued** [1] - 34:24
**continuously** [1] - 40:6
**contract** [1] - 14:9
**contractions** [1] - 18:22
**contribute** [1] - 36:23
**contribution** [1] - 40:11
**conveying** [1] - 5:11
**conveys** [4] - 4:19, 4:20, 33:12, 33:20
**convince** [1] - 8:3
**copyright** [1] - 14:8
**corporation** [1] - 17:25
**correct** [3] - 5:9, 30:25, 35:18
**correctly** [1] - 33:6
**Corrupt** [2] - 24:1

**cost** [3] - 8:22, 27:24, 28:13
**costs** [15] - 12:21, 28:10, 28:15, 28:16, 28:23, 29:5, 30:16, 31:10, 33:21, 33:23, 36:10, 38:5, 38:6, 38:9, 38:19
**counsel** [1] - 31:25
**Counsel** [3] - 7:5, 19:18, 35:2
**country** [1] - 9:18
**couple** [2] - 3:4, 37:3
**coupled** [1] - 26:18
**course** [3] - 13:15, 23:15, 29:11
**COURT** [69] - 1:1, 2:3, 2:20, 2:24, 3:6, 3:11, 5:15, 5:24, 7:5, 7:9, 8:7, 8:10, 8:13, 8:15, 9:7, 10:8, 11:8, 11:20, 12:25, 13:24, 14:5, 14:23, 15:12, 16:13, 16:17, 16:22, 17:11, 17:14, 18:11, 18:15, 18:25, 19:18, 19:20, 19:24, 20:11, 20:13, 20:19, 20:24, 21:1, 21:6, 21:13, 21:16, 21:20, 23:10, 23:20, 24:14, 24:17, 27:1, 27:7, 27:10, 27:13, 27:18, 28:14, 29:3, 30:6, 31:13, 31:18, 32:3, 32:24, 33:10, 34:9, 34:12, 34:14, 37:13, 37:17, 37:19, 38:13, 39:21, 40:9
**Court's** [4] - 6:5, 9:14, 32:25, 38:10
**Courthouse** [1] - 1:5
**cover** [2] - 27:8, 37:4
**created** [1] - 24:12
**crystal** [1] - 29:14
**customer** [4] - 7:18, 9:16, 10:2, 16:15
**customer-based** [1] - 10:2
**customers** [7] - 7:20, 9:23, 10:5, 10:11, 10:13, 14:7, 14:16
**cut** [2] - 8:16, 8:17

# D

**dates** [1] - 23:7
**David** [1] - 24:21
**Davis** [3] - 3:2, 21:24, 40:11
**DAVIS** [1] - 1:20
**de** [1] - 12:6
**dealing** [1] - 35:21
**deals** [1] - 15:3
**December** [2] - 15:15, 19:14
**decide** [1] - 32:15
**decided** [1] - 40:5
**decision** [3] - 11:18, 17:5, 26:1
**decisions** [1] - 11:16
**decrease** [1] - 9:3
**Defendant** [1] - 1:24
**defendant** [4] - 14:6, 17:8, 18:1, 18:3
**defendant's** [7] - 2:10, 15:23, 18:20, 19:11, 32:11, 32:12, 33:8
**defendants** [17] - 3:14, 6:16, 8:2, 9:17, 17:18, 22:8, 22:11, 27:21, 32:17, 32:22, 34:3, 37:14, 37:16, 37:22, 38:12, 38:15, 38:17
**Defendants** [1] - 1:20
**Defense** [1] - 35:2
**defense** [1] - 30:9
**defer** [1] - 39:20

**deficient** [3] - 13:5, 13:6
**degrees** [1] - 3:22
**demonstrates** [1] - 29:23
**deny** [2] - 18:2, 36:2
**describes** [2] - 13:20, 15:21
**description** [2] - 13:9, 16:1, 36:9
**detail** [1] - 23:16
**detailing** [1] - 14:1
**details** [1] - 31:22
**determination** [1] - 11:22
**determine** [1] - 14:18
**determined** [1] - 8:24
**Deutsche** [1] - 11:19
**dial** [1] - 20:17
**differ** [1] - 7:16
**difference** [4] - 11:4, 29:13, 36:1
**differences** [1] - 29:12, 29:17
**different** [12] - 5:7, 9:9, 26:9, 28:22, 29:9, 29:18, 29:24, 30:4, 31:11, 31:12, 39:7
**differently** [2] - 6:11, 16:12
**difficult** [4] - 8:13, 11:2, 11:5
**difficulty** [1] - 20:6
**direct** [1] - 20:2
**directly** [1] - 15:8
**disaffected** [2] - 10:11, 10:13
**disclose** [21] - 7:24, 17:9, 22:14, 22:18, 22:20, 22:23, 22:24, 23:4, 23:8, 24:11, 24:24, 25:6, 25:12, 25:15, 25:19, 31:2, 35:9, 35:23, 36:7, 36:12, 38:8
**disclosed** [16] - 5:19, 10:12, 12:21, 12:22, 13:2, 15:2, 15:6, 28:10, 28:22, 29:5, 34:4, 34:21, 35:24, 38:7, 38:8
**discloses** [1] - 33:21
**disclosure** [8] - 6:11, 10:23, 11:5, 17:24, 18:4, 22:10, 28:4, 30:25
**disclosures** [6] - 8:5, 12:18, 13:1, 26:19, 26:22, 26:25
**discrepancies** [1] - 39:6
**discussed** [1] - 6:23
**discussing** [1] - 38:18
**dismiss** [3] - 2:10, 32:9, 36:3
**dismissal** [3] - 6:25, 11:14, 39:17
**dismissed** [3] - 7:2, 7:13, 39:5
**disparate** [1] - 30:2
**dispute** [1] - 28:9
**dissatisfied** [1] - 10:5
**DISTRICT** [3] - 1:1, 1:1, 1:11
**District** [2] - 6:25
**district** [1] - 31:4
**disturbed** [1] - 3:23
**dollar** [1] - 5:24
**dollars** [1] - 4:12
**door** [1] - 10:4
**down** [2] - 31:9, 31:19
**drafting** [1] - 32:17
**draw** [2] - 14:25, 16:6
**drop** [1] - 8:17
**due** [2] - 32:12, 39:7

**during** [1] - 37:25
**duty** [11] - 17:8, 17:24, 22:10, 22:14, 22:23, 23:8, 25:19, 31:2, 35:21, 35:22, 36:11
**duty-bound** [1] - 36:11

## E

**East** [1] - 1:17
**EASTERN** [1] - 1:1
**ECA** [2] - 11:17, 26:1
**effect** [1] - 30:2
**effectively** [3] - 30:24, 34:16, 35:6
**either** [4] - 12:14, 25:22, 35:6, 36:7
**Emiliano** [1] - 1:22
**emotionally** [1] - 21:7
**emphasize** [1] - 36:24
**enabled** [1] - 36:9
**end** [2] - 15:14, 39:2
**endeavor** [1] - 38:11
**ended** [2] - 20:10, 21:19
**endure** [1] - 21:7
**engaged** [1] - 4:21
**ensure** [1] - 22:2
**entire** [1] - 10:21
**entirely** [1] - 28:24
**entirety** [1] - 6:2
**entities** [1] - 29:17
**entity** [4] - 24:7, 30:4, 31:10, 31:11
**error** [1] - 38:5
**errors** [7] - 29:14, 29:21, 30:17, 31:7, 33:19, 36:5, 38:6
**Escobari** [1] - 1:22
**ESQ** [6] - 1:15, 1:16, 1:19, 1:19, 1:22, 1:25
**estimate** [1] - 12:23
**evaluate** [2] - 16:2, 16:5
**ex** [4] - 17:18, 19:16, 23:8
**ex-ante** [3] - 17:18, 19:16, 23:8
**ex-post** [1] - 17:18
**exactly** [4] - 24:17, 35:10, 35:18, 38:20
**example** [6] - 9:14, 9:16, 10:12, 18:8, 23:25, 29:22
**Exchange** [2] - 15:24, 27:15
**execution** [4] - 33:19, 36:4, 38:5, 38:6
**Exhibit** [2] - 18:19, 33:7
**existed** [1] - 36:10
**exits** [1] - 20:23
**expands** [1] - 22:17
**expense** [2] - 8:23, 9:10
**expenses** [3] - 28:3, 30:2, 36:4
**experiencing** [1] - 5:5
**expert** [1] - 7:12
**explains** [1] - 25:5
**explanatory** [1] - 4:18
**exposed** [1] - 30:13
**exposure** [5] - 5:21, 8:25, 12:5, 14:3, 14:13
**express** [1] - 3:19

**expressly** [1] - 16:2

## F

**F.3d** [4] - 6:9, 11:17, 11:19, 35:13
**F.Supp** [3] - 25:4, 31:3, 39:4
**face** [3] - 10:25, 12:15, 12:18
**facilities** [1] - 34:18
**fact** [13] - 6:16, 8:3, 12:18, 12:20, 12:22, 14:18, 17:4, 17:20, 19:4, 20:21, 25:22, 26:19, 29:12
**fact-finding** [1] - 6:16
**factor** [1] - 8:21
**facts** [2] - 38:23, 39:1
**failed** [2] - 38:8, 39:5
**fails** [2] - 22:20, 22:24
**failure** [7] - 7:24, 24:24, 25:6, 25:12, 27:22, 35:9, 36:7
**failures** [5] - 27:23, 30:17, 33:19, 36:4, 38:5
**familiar** [2] - 40:4
**Family** [2] - 1:15, 2:16
**far** [1] - 12:2
**fatal** [2] - 39:13, 39:17
**favor** [1] - 16:8
**FCA** [2] - 1:21, 3:3
**Federal** [1] - 15:25
**fees** [4] - 32:8, 35:23, 35:24, 36:1
**fell** [1] - 17:21
**few** [1] - 4:2
**file** [1] - 8:24, 9:22, 37:5
**filed** [1] - 29:20
**financial** [10] - 7:21, 9:18, 9:25, 18:8, 23:24, 28:11, 28:20, 34:20, 34:21, 36:8
**finder** [2] - 8:3, 14:18
**fine** [2] - 8:15, 23:6
**FINRA** [2] - 9:20, 23:22
**Firm** [1] - 2:15
**FIRM** [1] - 1:13
**firm** [3] - 2:18, 9:18, 39:23
**first** [8] - 4:7, 12:4, 17:16, 22:19, 28:8, 29:19, 37:22, 38:18
**five** [1] - 20:15
**flag** [1] - 13:18, 39:12
**flaw** [2] - 30:15, 39:14, 39:17
**floated** [1] - 19:13
**Floor** [1] - 1:18
**focus** [1] - 6:5
**focused** [1] - 12:3
**focusing** [3] - 9:5, 9:7, 9:8
**follow** [1] - 40:8
**followed** [1] - 40:6
**footnote** [1] - 14:4
**FOR** [1] - 1:10
**Foreign** [2] - 23:25, 24:1
**four** [1] - 2:20
**fours** [1] - 35:13
**frankly** [1] - 32:4
**fraud** [2] - 25:5, 30:9

**freestanding** [1] - 25:14
**friend** [2] - 33:6, 35:18
**full** [2] - 28:3, 29:21
**fuller** [1] - 32:13

## G

**GAAP** [1] - 35:8
**game** [1] - 19:25
**Gate** [1] - 22:7
**general** [3] - 22:14, 35:5, 36:17
**generalized** [1] - 25:19
**generally** [2] - 3:12, 5:14
**given** [2] - 2:20, 7:18
**glad** [1] - 39:25
**GOLDBERG** [40] - 1:15, 2:14, 2:22, 4:14, 6:1, 7:7, 7:10, 8:8, 9:5, 9:11, 10:18, 13:22, 13:25, 14:6, 15:10, 15:13, 16:14, 17:6, 17:15, 18:17, 19:10, 19:21, 20:12, 20:14, 20:25, 22:1, 23:18, 23:21, 24:15, 27:9, 27:11, 27:14, 31:24, 32:19, 32:25, 33:11, 34:10, 34:13, 37:10, 37:24
**Goldberg** [35] - 2:15, 2:23, 4:14, 7:8, 7:9, 8:8, 8:11, 8:19, 9:11, 10:18, 13:8, 13:23, 15:10, 17:1, 17:16, 18:15, 18:18, 19:10, 19:21, 19:24, 20:12, 21:25, 22:4, 23:10, 23:19, 27:12, 27:13, 31:14, 31:19, 32:19, 33:3, 34:14, 37:6, 37:10, 37:22
**governed** [1] - 29:10
**Government** [3] - 22:9, 22:14, 25:18
**great** [2] - 21:10, 34:23
**greater** [1] - 14:15
**greatest** [1] - 17:19
**Greenwood** [1] - 1:14
**gross** [1] - 18:22
**ground** [2] - 7:2, 7:13, 11:20
**group** [2] - 14:6, 31:11
**Group** [1] - 6:9
**group's** [1] - 29:20
**GUARNERO** [1] - 1:19
**Guarnero** [2] - 2:19
**guess** [2] - 4:3, 14:24

## H

**HAIFETZ** [1] - 1:16
**HAIFETZ-LI** [1] - 1:16
**half** [1] - 4:11
**halfway** [1] - 7:10
**handle** [1] - 39:23
**handling** [1] - 9:15
**hang** [7] - 8:11, 20:2, 20:7, 20:17, 20:19, 20:20, 21:8
**happy** [2] - 21:5, 28:6
**Hasson** [1] - 2:18
**HASSON** [1] - 1:19
**hate** [2] - 20:2, 20:16
**hear** [13] - 8:7, 8:10, 8:12, 8:20, 17:10,

18:12, 19:22, 20:5, 31:14, 32:25, 37:21, 37:22, 39:25

**heard** [4] - 8:18, 16:18, 39:20, 39:24
**hearing** [1] - 17:9
**heart** [1] - 23:13
**Heifetz** [1] - 2:17
**Heifetz-Li** [1] - 2:17
**heightened** [2] - 15:24, 27:16
**held** [1] - 26:13
**help** [1] - 17:12
**helpful** [1] - 21:4
**helps** [1] - 13:3
**herring** [1] - 34:1
**hi** [1] - 27:3
**hiding** [1] - 35:5
**higher** [1] - 5:6
**hold** [1] - 25:21
**Honor** [81] - 2:14, 2:22, 3:1, 3:8, 4:14, 4:16, 4:22, 5:1, 6:1, 6:13, 7:18, 7:23, 8:8, 8:14, 9:5, 9:12, 9:21, 10:18, 11:1, 11:12, 11:24, 13:22, 14:10, 14:14, 14:21, 15:10, 15:16, 15:22, 16:2, 16:12, 16:16, 16:20, 17:6, 17:9, 17:16, 17:22, 18:9, 18:10, 18:17, 19:10, 19:15, 19:17, 20:12, 21:2, 22:1, 22:4, 22:11, 22:15, 22:23, 23:5, 23:18, 23:25, 24:10, 24:15, 24:20, 27:3, 27:9, 27:17, 28:6, 28:17, 30:15, 31:16, 31:24, 32:19, 33:2, 33:9, 34:5, 34:10, 34:13, 34:15, 35:1, 35:8, 35:12, 35:20, 37:15, 37:24, 38:10, 38:16, 40:1, 40:3, 40:16
**HONORABLE** [1] - 1:10
**hopefully** [1] - 2:6
**host** [1] - 21:13
**Hudson** [1] - 1:24
**hundred** [2] - 33:22, 34:1
**Hutchison** [1] - 11:18
**hypothetically** [1] - 9:24

## I

**idea** [1] - 25:20
**identified** [1] - 39:13
**IFA** [6] - 25:21, 25:22, 26:5, 26:7, 26:18, 26:22
**IFAs** [13] - 7:22, 9:24, 10:11, 14:16, 18:8, 18:21, 18:23, 18:24, 19:1, 19:2, 23:2, 23:4, 25:23
**IFRF** [2] - 29:11, 29:25
**illegal** [3] - 18:2, 22:22, 25:6
**immaterial** [8] - 5:10, 6:23, 8:1, 8:4, 8:6, 14:22, 24:3, 29:22
**immediately** [1] - 20:7
**impact** [3] - 11:1, 35:19, 35:24
**implausible** [1] - 16:11
**importance** [2] - 7:17, 26:3
**important** [9] - 11:6, 19:1, 19:7, 24:22, 25:22, 26:6, 28:9, 28:19, 36:5
**improper** [4] - 22:21, 22:22, 35:9, 35:11

**improved** [1] - 21:24
**IN** [1] - 1:4
**inappropriate** [1] - 29:25
**INC** [1] - 1:4
**Inc** [2] - 1:15, 2:16
**inch** [1] - 32:17
**include** [1] - 31:23
**includes** [1] - 15:17
**income** [4] - 4:25, 6:2, 33:23, 35:4
**inconsistencies** [1] - 29:16
**inconsistency** [1] - 29:13
**inconvenience** [1] - 20:9
**incorporated** [1] - 29:8
**incorrect** [2] - 8:5, 22:12
**increase** [6] - 4:17, 4:22, 4:23, 10:12, 10:20, 16:14
**increased** [1] - 8:25
**increasing** [2] - 9:25, 18:20
**independent** [3] - 7:21, 9:24, 18:8
**indicates** [1] - 15:19
**indication** [1] - 9:2
**indicative** [1] - 37:1
**inference** [2] - 14:25, 15:3
**inferences** [3] - 16:7
**inform** [3] - 32:22, 35:10, 35:16
**information** [8] - 4:19, 5:14, 6:15, 11:7, 14:20, 33:13, 33:20, 36:12
**inherently** [1] - 6:16
**initiate** [1] - 23:11
**initiated** [1] - 2:1
**instead** [3] - 4:24, 5:20, 21:9
**instruction** [1] - 32:25
**integral** [1] - 23:2
**integrity** [1] - 26:3
**intend** [1] - 38:12
**interested** [1] - 15:22
**interesting** [1] - 34:7
**international** [1] - 36:8
**interrupt** [1] - 19:22
**introduced** [1] - 2:23
**invest** [2] - 17:5, 19:14
**investigating** [1] - 24:4
**investigation** [18] - 17:1, 17:4, 19:8, 22:5, 22:9, 22:15, 22:24, 23:7, 23:12, 23:22, 23:23, 24:7, 24:8, 25:2, 25:11, 25:18
**investigations** [1] - 25:17
**investing** [1] - 6:7
**Investment** [3] - 17:23, 22:7, 22:17
**investment** [3] - 6:14, 14:7, 16:15
**Investments** [2] - 1:21, 3:3
**investor** [19] - 5:18, 5:22, 6:6, 6:10, 6:14, 7:15, 10:1, 10:20, 11:3, 11:6, 13:7, 13:18, 14:14, 14:19, 18:2, 28:1, 30:12, 33:15, 34:2
**investor's** [1] - 17:5
**investors** [4] - 4:20, 5:7, 5:12, 10:23, 18:4, 19:13, 35:10, 36:6, 36:9
**involved** [1] - 23:15

**involvement** [1] - 23:17
**involving** [1] - 22:9
**IPO** [7] - 12:22, 14:11, 17:1, 17:21, 23:7, 23:9, 39:15
**irrelevant** [2] - 17:20, 29:22
**issue** [10] - 6:21, 17:25, 18:5, 18:6, 22:20, 24:5, 28:14, 28:21, 38:18, 38:22
**issuer's** [1] - 26:10
**issues** [2] - 3:17, 30:25
**item** [5] - 8:22, 28:22, 28:24, 28:25, 36:7
**items** [2] - 27:23, 28:12
**itself** [8] - 4:19, 9:19, 10:7, 22:12, 25:22, 25:24, 26:7, 31:1

## J

**Jacob** [21] - 2:15, 2:22, 4:14, 7:7, 8:8, 9:11, 10:18, 13:23, 15:10, 17:16, 18:17, 19:10, 19:21, 20:12, 22:4, 23:19, 27:11, 32:19, 33:3, 34:14, 37:10
**JACOB** [1] - 1:15
**Jared** [1] - 1:23
**Jenkintown** [1] - 1:15
**JESSE** [1] - 1:19
**joke** [1] - 21:22
**JORGE** [1] - 1:22
**JP** [2] - 11:17, 26:1
**JUDGE** [1] - 1:11
**Judge** [8] - 2:2, 2:3, 20:23, 21:20, 34:15, 35:1, 35:2, 35:8
**Judge's** [1] - 40:3
**judgment** [2] - 8:3, 10:25

## K

**keep** [1] - 37:2
**key** [1] - 39:9
**Keyspan** [1] - 31:5
**kind** [5] - 13:17, 27:21, 27:25, 29:13, 36:17
**Kindgar** [1] - 27:3
**kinds** [1] - 13:14
**Kingdar** [3] - 3:9, 16:20, 31:16
**knowledge** [2] - 29:23, 32:21
**knows** [4] - 4:5, 5:1, 9:17, 17:17

## L

**labor** [3] - 9:16, 9:24, 15:19
**lack** [2] - 11:14, 29:23
**land** [1] - 16:24
**language** [1] - 11:23
**larger** [1] - 7:19
**largest** [2] - 34:18, 34:19
**last** [10] - 7:9, 8:9, 8:18, 8:20, 19:19, 27:8, 27:20, 34:6, 36:16, 37:23
**Laurence** [1] - 2:18
**LAURENCE** [1] - 1:19
**law** [10] - 6:23, 8:1, 8:6, 14:22, 26:20,

26:25, 35:14, 39:23, 39:24, 40:4
**LAW** [1] - 1:13
**Law** [1] - 2:15
**Laws** [1] - 17:17
**laws** [1] - 26:11
**lawsuit** [3] - 9:1, 9:2, 9:9
**lawsuits** [4] - 10:21, 13:11, 13:14, 13:20
**lay** [1] - 16:24
**lays** [1] - 35:14
**lead** [2] - 17:2, 26:8
**Leah** [1] - 2:17
**LEAH** [1] - 1:16
**leaning** [1] - 27:21
**left** [1] - 23:1
**legal** [3] - 9:15, 12:18, 12:19
**LEIBHARD** [1] - 1:17
**lent** [1] - 34:16
**less** [2] - 26:12, 32:12
**letter** [5] - 15:23, 18:20, 33:8, 39:13, 40:7
**Leval** [3] - 34:15, 35:2, 35:8
**Lexington** [1] - 1:21
**Li** [1] - 2:17
**LI** [1] - 1:16
**liability** [2] - 7:25, 16:3
**Liebhard** [1] - 2:18
**Lifchitz** [2] - 1:22, 3:3
**lifeblood** [3] - 7:20, 7:21, 14:17
**likelihood** [1] - 9:3
**line** [15] - 2:5, 3:4, 8:7, 20:8, 21:5, 22:3, 28:11, 28:12, 28:20, 28:22, 28:24, 28:25, 35:19, 35:25, 36:7
**Lions** [1] - 22:7
**listed** [1] - 6:19
**lists** [2] - 14:1, 15:18
**literal** [1] - 35:16
**Litigation** [2] - 2:8, 39:4
**litigation** [6] - 5:5, 9:22, 9:23, 9:25, 10:6, 15:3
**LITIGATION** [1] - 1:5
**Litwin** [3] - 6:9, 6:23, 6:24
**LLC** [3] - 1:21, 3:3, 3:9
**LLP** [2] - 1:17, 1:24
**loan** [3] - 34:24, 35:5, 35:9
**look** [3] - 5:17, 19:16, 33:16
**looking** [3] - 5:19, 19:5, 23:15
**losing** [1] - 7:6
**loss** [2] - 8:24, 12:23
**losses** [1] - 12:24
**lost** [1] - 19:18
**louder** [1] - 17:12
**loudly** [1] - 19:23
**Lynch** [2] - 31:3, 33:5

## M

**main** [1] - 29:14
**majority** [1] - 14:12

**Management** [1] - 25:4
**management** [2] - 14:8, 35:23
**manager** [1] - 26:10
**manager's** [1] - 26:16
**March** [1] - 17:21
**margin** [1] - 18:22
**MARQUES** [1] - 1:22
**MARQUEZ** [15] - 3:1, 5:23, 11:11, 11:24, 21:2, 21:10, 21:15, 21:18, 24:20, 28:6, 28:17, 29:4, 30:14, 37:15, 38:16
**Marquez** [8] - 3:2, 11:11, 11:25, 21:3, 24:21, 28:7, 37:16, 38:17
**Mart** [3] - 24:3, 24:5, 24:10
**Mart's** [2] - 24:2, 24:9
**Martin** [1] - 1:22
**material** [35] - 4:13, 4:21, 4:23, 4:25, 5:12, 6:4, 7:3, 7:14, 10:20, 11:3, 11:5, 12:14, 12:16, 12:20, 13:2, 16:15, 17:2, 18:6, 18:7, 22:20, 23:4, 23:23, 23:24, 24:6, 25:13, 25:20, 25:21, 25:24, 26:7, 30:12, 33:21, 36:1, 36:5, 36:11, 36:13
**materiality** [16] - 4:16, 4:18, 5:3, 5:14, 6:8, 6:10, 6:15, 9:4, 11:14, 11:22, 12:2, 12:8, 13:13, 23:19, 26:4, 35:21
**materially** [6] - 5:6, 6:18, 7:24, 10:1, 22:24, 29:6
**materials** [1] - 29:8
**Matter** [1] - 40:17
**matter** [8] - 5:21, 6:23, 8:1, 8:6, 10:17, 13:15, 14:22, 28:12
**MATTHEW** [1] - 1:19
**Matthew** [1] - 2:19
**mean** [4] - 10:16, 19:7, 25:23, 26:6
**meaning** [1] - 16:6
**means** [1] - 4:19
**measured** [1] - 35:15
**memorized** [1] - 13:10
**memory** [1] - 33:6
**Menaldi** [2] - 25:3, 27:15
**mere** [1] - 17:4
**merely** [2] - 19:7, 24:7
**Merrill** [2] - 31:3, 33:5
**Messrs** [1] - 3:3
**metric** [2] - 28:12, 28:20
**Mexican** [4] - 24:2, 24:6, 24:9, 24:12
**might** [4] - 28:1, 28:15, 30:12, 32:13
**Milbank** [1] - 3:9
**MILBANK** [1] - 1:24
**million** [17] - 4:10, 4:11, 4:17, 4:23, 4:24, 5:10, 5:21, 6:3, 6:4, 12:5, 14:13, 33:22, 34:1
**mind** [5] - 3:20, 3:24, 3:25, 37:2, 38:11
**minds** [1] - 7:16
**minimus** [1] - 12:6
**minor** [1] - 23:16
**minute** [2] - 21:17, 35:3
**misconduct** [1] - 25:15
**mislead** [1] - 35:17
**misleading** [2] - 29:6, 30:25

**misleads** [1] - 18:4
**misrepresentation** [1] - 7:3
**misstatements** [1] - 7:14
**mix** [2] - 11:7, 14:20
**model** [1] - 10:3
**money** [4] - 10:3, 34:16, 35:6
**monolithic** [1] - 30:21
**month** [2] - 6:2, 32:13
**Morgan** [2] - 11:17, 26:1
**morning** [4] - 2:3, 2:14, 3:1, 3:8
**most** [1] - 38:20
**motion** [17] - 2:9, 2:10, 3:12, 3:13, 3:20, 3:21, 3:23, 4:1, 7:1, 15:23, 32:9, 32:11, 32:12, 33:8, 36:2, 37:23, 39:12
**MOTION** [1] - 1:10
**motions** [1] - 32:18
**move** [2] - 16:23, 27:20
**must** [4] - 19:16, 22:18, 22:22, 25:7

## N

**name** [1] - 4:4
**narrow** [1] - 5:9
**national** [1] - 23:11
**nature** [5] - 12:10, 13:11, 13:20, 14:1, 15:1
**necessarily** [2] - 9:13, 30:9
**necessary** [1] - 6:10
**needs** [3] - 6:6, 16:19, 37:21
**negligence** [1] - 16:4
**net** [3] - 4:25, 6:2, 33:22
**network** [7] - 25:21, 25:22, 26:5, 26:7, 26:18, 26:23, 40:11
**never** [3] - 17:3, 23:14, 34:20
**NEW** [1] - 1:1
**New** [7] - 1:5, 1:18, 1:21, 1:25
**next** [1] - 30:15
**nine** [1] - 6:2
**nine-month** [1] - 6:2
**non** [1] - 30:25
**non-misleading** [1] - 30:25
**nondisclosure** [3] - 8:23, 10:14, 13:21
**nondisclosures** [1] - 13:3
**nongovernmental** [1] - 23:23
**nonrepetitive** [2] - 16:19, 27:5
**normal** [1] - 13:15
**note** [3] - 3:18, 26:17
**noted** [5] - 23:1, 24:25, 26:2, 28:8, 29:21
**notes** [2] - 6:16, 35:19
**nothing** [10] - 8:18, 12:12, 15:7, 16:21, 19:5, 23:7, 26:24, 27:5, 31:17, 36:25
**noting** [1] - 28:19
**notion** [1] - 31:9
**November** [1] - 34:7
**number** [9] - 4:20, 5:12, 7:25, 10:7, 10:21, 10:24, 14:15, 21:9, 21:11
**nursing** [1] - 34:17

## O

**obligation** [3] - 25:14, 35:3, 35:5
**observation** [1] - 25:25
**obviously** [3] - 7:4, 7:15, 11:14
**occurred** [1] - 25:8
**occurring** [1] - 18:3
**Och** [1] - 25:4
**Och-Ziff** [1] - 25:4
**OF** [2] - 1:1, 1:9
**offer** [1] - 17:21
**offering** [3] - 5:24, 17:19, 19:13
**often** [1] - 23:11
**Omega** [2] - 34:6, 34:25
**omission** [5] - 4:13, 7:3, 12:16, 25:13, 35:15
**omissions** [1] - 7:14
**omits** [1] - 30:11
**omitted** [1] - 34:23
**once** [2] - 23:14, 30:18
**one** [17] - 3:23, 7:23, 8:21, 9:19, 12:2, 16:25, 19:6, 27:20, 27:22, 28:5, 29:14, 30:3, 32:17, 33:25, 34:18, 35:20, 36:9
**ones** [1] - 15:6
**ongoing** [1] - 24:8
**oooOooo** [1] - 40:19
**operate** [1] - 34:17
**operating** [1] - 38:19
**operation** [2] - 24:12, 30:17
**operations** [4] - 10:22, 24:2, 24:6, 24:9
**operator** [3] - 34:19, 34:20, 34:25
**operators** [3] - 34:16, 34:17, 34:18
**opinion** [6] - 3:19, 6:14, 10:24, 18:3, 34:8
**opportunity** [1] - 32:1
**order** [4] - 33:19, 36:4, 38:5, 38:6
**ordinary** [3] - 5:18, 27:24, 28:15
**out-of-pocket** [2] - 8:23, 9:10
**outcome** [1] - 23:6
**outset** [1] - 36:25
**overlooking** [2] - 24:23, 29:7
**owed** [2] - 35:6
**own** [2] - 31:1, 39:14

## P

**P.A** [1] - 1:13
**page** [6] - 18:19, 18:22, 18:24, 29:19, 33:8, 33:9
**panel** [1] - 34:6
**papers** [2] - 3:22, 40:7
**paragraph** [9] - 13:23, 13:25, 15:11, 15:18, 15:19, 15:21, 16:11, 33:14
**pardon** [7] - 7:22, 9:14, 14:20, 16:8, 17:7, 36:5, 38:7
**part** [5] - 7:20, 12:19, 18:7, 23:4, 24:8
**particular** [5] - 6:7, 13:11, 13:17, 15:4, 28:12
**Partners** [3] - 17:23, 22:7, 22:17

**pattern** [1] - 31:7
**Pause** [1] - 18:14
**pay** [1] - 34:24
**payments** [3] - 18:21, 18:23, 18:24
**pen** [1] - 21:8
**pending** [2] - 12:24, 25:17
**Pennsylvania** [1] - 1:15
**people** [2] - 2:12, 2:20
**percent** [3] - 10:13, 10:14, 14:15
**percentage** [1] - 10:11
**PEREZ** [16] - 1:22, 3:1, 5:23, 11:11, 11:24, 21:2, 21:10, 21:15, 21:18, 24:20, 28:6, 28:17, 29:4, 30:14, 37:15, 38:16
**Perez** [8] - 3:2, 11:11, 11:25, 21:3, 24:21, 28:7, 37:16, 38:17
**PEREZ-MARQUES** [1] - 1:22
**PEREZ-MARQUEZ** [15] - 3:1, 5:23, 11:11, 11:24, 21:2, 21:10, 21:15, 21:18, 24:20, 28:6, 28:17, 29:4, 30:14, 37:15, 38:16
**Perez-Marquez** [8] - 3:2, 11:11, 11:25, 21:3, 24:21, 28:7, 37:16, 38:17
**performance** [1] - 26:16
**perhaps** [1] - 20:17
**permitted** [1] - 35:25
**perspective** [4] - 5:18, 13:12, 38:3
**pertains** [1] - 24:24
**phone** [3] - 4:4, 20:15, 21:21
**pieces** [1] - 5:5
**place** [1] - 37:4
**places** [2] - 18:5, 18:6
**plaintiff** [8] - 2:13, 4:3, 4:7, 4:15, 11:21, 14:24, 16:8, 27:22
**Plaintiffs** [1] - 1:13
**plaintiffs** [16] - 2:16, 3:15, 13:17, 24:23, 25:14, 26:2, 26:8, 26:24, 28:21, 29:4, 29:7, 29:15, 37:5, 37:11, 38:21, 39:5
**plaintiffs'** [3] - 28:23, 39:12, 39:14
**plausibility** [1] - 16:9
**plausible** [6] - 16:9, 16:14, 16:16, 25:7, 36:21, 39:6
**plausibly** [2] - 38:4, 38:23
**pleaded** [2] - 16:3
**pleading** [8] - 8:1, 8:4, 11:15, 14:17, 14:22, 15:25, 16:5, 27:16
**pleads** [2] - 15:8, 38:3
**pled** [2] - 38:23, 39:1
**pocket** [2] - 8:23, 9:10
**point** [21] - 11:10, 11:16, 13:22, 14:23, 16:19, 16:21, 18:9, 23:6, 24:23, 25:3, 27:8, 28:9, 28:18, 30:23, 30:24, 31:2, 31:5, 36:24, 38:19, 39:9, 39:10
**pointed** [1] - 11:16
**points** [3] - 29:22, 35:8, 38:16
**Polk** [4] - 3:2, 21:24, 24:21, 40:11
**POLK** [1] - 1:20
**portfolio** [3] - 14:8, 26:10, 26:16
**posing** [1] - 15:5

**position** [2] - 28:23, 31:6
**positive** [2] - 26:17, 26:23
**possibility** [1] - 38:22
**possible** [8] - 12:24, 14:1, 14:2, 14:12, 15:18, 20:16, 36:20, 36:21
**post** [2] - 17:18, 23:7
**post-dates** [1] - 23:7
**potential** [5] - 12:5, 14:2, 25:17, 33:24, 34:3
**potentially** [1] - 22:21
**practical** [1] - 5:18
**practice** [1] - 22:22
**Practices** [2] - 24:1, 24:2
**Prakash** [3] - 1:14, 1:14, 2:16
**pre** [6] - 2:9, 3:12, 3:23, 15:23, 33:8, 39:12
**PRE** [1] - 1:10
**pre-motion** [6] - 2:9, 3:12, 3:23, 15:23, 33:8, 39:12
**PRE-MOTION** [1] - 1:10
**predict** [1] - 11:1
**preliminary** [1] - 3:19
**premise** [2] - 30:20, 31:6
**present** [2] - 32:14
**presented** [3] - 7:1, 25:10, 26:24
**presenting** [1] - 27:24
**presently** [1] - 32:2
**presupposes** [1] - 5:13
**pretty** [2] - 32:12, 39:23
**price** [3] - 6:7, 17:21
**principle** [1] - 22:11
**principles** [1] - 29:11
**privileged** [1] - 34:5
**probable** [1] - 12:23
**probing** [1] - 3:25
**problem** [13] - 6:5, 19:2, 19:6, 19:7, 20:22, 22:20, 27:25, 33:24, 34:3, 34:22, 35:1, 36:18
**problems** [1] - 24:9
**Procedure** [1] - 15:25
**proceedings** [14] - 6:18, 7:25, 8:5, 12:10, 12:19, 12:20, 12:23, 15:14, 15:16, 15:19, 15:20, 16:10, 16:11, 18:14
**product** [1] - 10:5
**prolific** [1] - 37:25
**prompt** [2] - 10:1, 36:2
**properly** [3] - 7:2, 7:13, 13:2
**property** [1] - 34:17
**proposed** [1] - 2:10
**prospective** [2] - 7:25, 33:13
**provide** [3] - 21:5, 33:12, 36:9
**Prussien** [3] - 3:9, 16:20, 27:4, 31:14, 31:16, 39:19, 39:25, 40:2
**PRUSSIEN** [7] - 1:25, 3:8, 16:20, 27:3, 31:16, 37:18, 40:1
**PSLRA** [2] - 16:1, 27:15
**publicly** [1] - 31:1, 31:2, 33:4
**purchase** [1] - 39:15

**purchased** [1] - 34:16
**purchases** [1] - 39:16
**put** [8] - 16:25, 18:5, 18:6, 19:14, 20:7, 20:19, 23:5, 24:5
**puts** [2] - 17:25, 22:19

## Q

**qualitative** [2] - 5:4, 12:8
**qualitatively** [3] - 10:6, 12:14, 36:12
**quality** [11] - 5:17, 9:6, 9:7, 9:8, 9:9, 10:15, 13:12, 13:20, 28:14
**quantitative** [3] - 5:4, 12:2, 12:7
**quantitatively** [2] - 5:10, 12:13
**quantity** [7] - 5:16, 6:6, 9:6, 10:7, 10:15, 10:16, 13:12
**quarter** [1] - 4:11
**questions** [2] - 4:2, 38:20
**quite** [2] - 26:6, 26:9
**quotation** [1] - 7:11
**quote** [4] - 15:14, 29:16, 39:5
**quoting** [1] - 22:15

## R

**rain** [1] - 19:25
**raise** [2] - 30:23, 39:10
**raised** [2] - 13:17, 13:18
**rang** [1] - 20:14
**rather** [4] - 6:15, 13:12, 27:23, 35:16
**rating** [1] - 14:8
**RE** [1] - 1:4
**re** [2] - 20:7, 38:1
**Re** [3] - 2:8, 31:3, 39:3
**re-put** [1] - 20:7
**re-read** [1] - 38:1
**reach** [1] - 11:22
**reaction** [1] - 38:2
**read** [2] - 27:19, 38:1
**reading** [3] - 4:9, 14:14, 15:23
**reads** [3] - 14:6, 30:18, 34:1
**real** [8] - 4:17, 4:23, 5:10, 6:3, 6:4, 6:20, 14:13, 33:22
**really** [10] - 5:21, 12:6, 12:8, 13:1, 13:4, 20:4, 30:19, 36:17, 36:19, 38:5
**reason** [3] - 8:17, 32:9, 35:11
**reasonable** [8] - 7:15, 7:16, 10:20, 11:3, 11:6, 14:19, 16:7, 18:2
**reasons** [3] - 12:2, 17:25, 22:25
**reassert** [1] - 7:23
**recent** [1] - 38:20
**recently** [1] - 24:9
**recognize** [1] - 9:17
**reconvene** [1] - 20:8
**recorded** [1] - 28:25
**red** [3] - 13:18, 33:25
**refer** [3] - 14:4, 15:11, 33:7
**reference** [1] - 15:16
**referred** [1] - 33:5

**referring** [1] - 37:9
**refers** [1] - 33:6
**reflect** [1] - 29:13
**reflected** [2] - 34:8
**regarding** [2] - 14:4, 26:4
**registration** [12] - 4:18, 4:20, 5:11, 5:13, 6:19, 10:22, 18:6, 18:9, 18:19, 30:10, 33:12, 38:8
**regular** [1] - 12:19
**regulation** [1] - 35:22
**regulatory** [3] - 23:11, 23:23, 24:8
**Reit** [1] - 34:19
**rejected** [1] - 26:12
**rejoined** [1] - 21:21
**rejoins** [1] - 20:23
**relate** [1] - 33:23
**related** [3] - 14:8, 16:10, 22:24
**relative** [1] - 28:13
**relief** [1] - 16:9
**rely** [4] - 26:8, 33:17, 40:6
**remarks** [1] - 13:16
**remind** [1] - 4:3
**rent** [1] - 34:24
**replace** [1] - 2:7
**report** [4] - 29:15, 29:21, 29:23, 38:2
**reporter** [4] - 4:5, 17:13, 20:5, 22:2
**REPORTER** [4] - 7:5, 8:13, 17:14, 19:18
**reporting** [3] - 36:8, 39:7, 39:8
**representative** [1] - 9:18
**represented** [1] - 10:12
**representing** [1] - 3:10
**reputation** [2] - 26:3, 26:4
**required** [3] - 22:12, 23:4, 26:25
**requires** [2] - 22:10, 39:17
**requiring** [1] - 35:23
**reserves** [1] - 12:22
**resolutions** [1] - 12:21
**respect** [4] - 9:23, 26:15, 36:3, 38:2
**respectfully** [1] - 10:19
**responding** [1] - 29:20
**response** [2] - 24:19, 39:12
**restarted** [2] - 20:10, 21:19
**rests** [1] - 25:5
**result** [2] - 23:24, 24:13
**results** [1] - 25:17
**reversal** [1] - 35:11
**reversed** [1] - 34:11
**reversing** [1] - 6:25
**review** [1] - 16:4
**risk** [6] - 5:7, 10:2, 12:23, 14:8, 18:20, 19:15
**risks** [1] - 26:22
**robust** [2] - 12:17, 19:12
**room** [1] - 20:20
**Rosen** [1] - 2:15
**ROSEN** [1] - 1:13
**Rule** [2] - 15:25, 16:5
**rules** [1] - 29:24

**run** [1] - 3:11

## S

**SAB** [1] - 5:3
**Sam** [1] - 5:3
**Sam-alpha-bravo** [1] - 5:3
**schedule** [3] - 37:4, 37:8, 37:12
**Schwab** [1] - 10:3
**SEC** [5] - 5:2, 23:21, 24:3, 24:7, 35:22
**second** [6] - 8:11, 13:8, 34:18, 34:19, 37:5, 39:10
**Second** [11] - 5:2, 6:24, 11:15, 11:16, 11:18, 26:1, 32:4, 34:6, 34:10, 35:14, 40:6
**seconds** [3] - 8:18, 8:20, 18:11
**SECURITIES** [1] - 1:4
**securities** [5] - 25:5, 26:11, 26:25, 30:9, 39:5
**Securities** [3] - 2:8, 17:17, 39:4
**see** [6] - 2:6, 3:12, 3:16, 4:1, 18:11, 20:3, 30:19, 36:6
**seem** [3] - 10:16, 27:25, 36:15
**self** [2] - 4:18, 33:15
**self-contained** [1] - 33:15
**self-explanatory** [1] - 4:18
**selling** [1] - 33:11
**SENIOR** [1] - 1:11
**sense** [2] - 5:9, 10:8
**sentence** [2] - 7:9, 19:19
**separate** [3] - 26:5, 27:23, 36:7
**serve** [1] - 21:13
**serves** [1] - 33:6
**set** [1] - 39:9
**Setzer** [2] - 34:5, 34:15
**several** [1] - 15:24
**share** [1] - 19:13
**shareholders** [1] - 33:11
**sheet** [1] - 35:4
**shortly** [2] - 20:9, 37:7
**show** [2] - 8:2, 10:6
**significant** [2] - 23:16, 28:15
**similar** [1] - 25:25
**simple** [1] - 30:6
**simplify** [1] - 3:13
**single** [2] - 28:24, 28:25
**situation** [1] - 39:2
**six** [1] - 32:17
**six-inch** [1] - 32:17
**skilled** [1] - 34:17
**small** [1] - 13:6
**smaller** [1] - 7:19
**Smith** [4] - 35:12, 35:20, 35:22, 35:23
**solely** [1] - 11:22
**soon** [2] - 20:8, 32:12
**sorry** [7] - 7:5, 8:9, 12:13, 13:23, 18:10, 19:18, 20:9
**sort** [1] - 31:7
**sound** [1] - 3:23

**source** [2] - 15:8, 22:20
**sources** [1] - 15:4
**speaker** [1] - 8:17
**speakerphone** [1] - 8:16
**speakers** [1] - 4:4
**speaking** [6] - 2:12, 2:21, 3:5, 4:5, 20:17, 22:8
**special** [2] - 40:10, 40:12
**specific** [2] - 10:24, 26:15
**speculate** [1] - 25:16
**stage** [7] - 6:13, 8:1, 8:4, 11:2, 11:15, 14:17, 14:22
**standard** [3] - 6:8, 15:25, 36:8
**standards** [9] - 27:16, 29:10, 29:18, 29:24, 30:5, 30:8, 31:12, 39:7, 39:8
**standing** [1] - 39:24
**start** [5] - 4:5, 19:3, 19:4, 28:5, 28:19
**state** [5] - 4:4, 17:18, 22:11, 25:7, 40:4
**statement** [15] - 4:19, 5:13, 6:19, 10:22, 18:1, 18:9, 18:19, 26:4, 26:15, 26:18, 35:4, 35:5, 35:15, 38:8, 40:3
**statements** [2] - 19:11, 26:14
**states** [1] - 18:3
**STATES** [2] - 1:1, 1:11
**States** [1] - 1:5
**static** [1] - 20:15
**still** [5] - 10:14, 10:16, 30:12, 35:25, 36:1
**stock** [2] - 17:19, 19:12
**stop** [3] - 18:25, 32:5, 32:6
**story** [1] - 26:23
**straight** [1] - 34:21
**straights** [1] - 34:20
**streamline** [1] - 3:17
**Street** [1] - 1:17
**strict** [1] - 16:3
**stuff** [1] - 33:16
**subject** [7] - 15:14, 17:24, 26:19, 26:20, 29:9, 29:18, 31:12
**submit** [1] - 16:12
**subsidiary** [1] - 29:1
**substance** [2] - 30:19, 36:16
**success** [12] - 17:25, 18:7, 19:12, 22:19, 22:21, 22:25, 23:3, 23:13, 23:24, 24:5, 24:6
**suffice** [1] - 25:13
**sufficiency** [1] - 16:5
**suggesting** [1] - 13:16
**suggestion** [1] - 10:10
**suggests** [1] - 36:18
**Suite** [1] - 1:14
**suits** [2] - 12:11, 12:13
**summarizing** [1] - 14:1
**summary** [1] - 8:2
**supported** [4] - 30:22, 31:8, 38:23, 39:1
**Supreme** [1] - 40:5
**Swayam** [2] - 1:14, 2:16
**system** [6] - 9:15, 21:24, 27:23, 33:25,

38:4, 38:5
**systemic** [7] - 27:25, 33:24, 34:3, 35:20, 36:18, 36:19, 38:22
**systems** [3] - 30:17, 33:19, 36:4

## T

**tax** [1] - 15:18
**technically** [1] - 30:11
**Technologies** [1] - 39:3
**tele** [1] - 40:11
**tele-con** [1] - 40:11
**teleconference** [3] - 2:1, 20:10, 21:19
**Teleconference** [2] - 20:10, 21:19
**TELEPHONE** [1] - 1:10
**tenuous** [1] - 26:14
**termination** [1] - 14:9
**tether** [1] - 24:12
**THE** [70] - 1:10, 1:13, 2:3, 2:20, 2:24, 3:6, 3:11, 5:15, 5:24, 7:5, 7:9, 8:7, 8:10, 8:13, 8:15, 9:7, 10:8, 11:8, 11:20, 12:25, 13:24, 14:5, 14:23, 15:12, 16:13, 16:17, 16:22, 17:11, 17:14, 18:11, 18:15, 18:25, 19:18, 19:20, 19:24, 20:11, 20:13, 20:19, 20:24, 21:1, 21:6, 21:13, 21:16, 21:20, 23:10, 23:20, 24:14, 24:17, 27:1, 27:7, 27:10, 27:13, 27:18, 28:14, 29:3, 30:6, 31:13, 31:18, 32:3, 32:24, 33:10, 34:9, 34:12, 36:14, 37:13, 37:17, 37:19, 38:13, 39:21, 40:9
**themselves** [1] - 25:16
**therefore** [2] - 16:4, 23:3
**therein** [1] - 29:9
**thick** [1] - 32:18
**three** [3] - 4:4, 4:11, 22:18
**threshold** [2] - 12:3, 28:9
**Thursday** [1] - 1:6
**tied** [3] - 18:7, 18:22, 18:24
**today** [2] - 32:21, 36:25
**tomorrow** [1] - 38:12
**tops** [1] - 5:21
**tort** [1] - 12:19
**total** [3] - 11:7, 12:4, 14:19
**touch** [1] - 40:14
**touched** [1] - 39:11
**touchstone** [1] - 16:8
**towards** [1] - 27:22
**trading** [2] - 17:20, 19:12
**transcript** [1] - 8:19
**TRANSCRIPT** [1] - 1:9
**transferred** [1] - 35:3
**treated** [4] - 30:3, 30:4, 31:10, 31:11
**treating** [1] - 28:2
**treatment** [5] - 29:12, 29:17, 30:24, 33:4, 35:9
**trend** [2] - 30:21, 31:7
**tried** [2] - 8:2, 19:25
**trigger** [1] - 25:18
**trouble** [1] - 32:17
**true** [1] - 16:6

**truth** [1] - 35:16
**try** [7] - 3:16, 18:16, 19:22, 20:6, 20:20, 21:6, 21:16
**trying** [2] - 5:17, 20:4
**turn** [1] - 13:8
**two** [6] - 4:11, 12:1, 15:5, 26:5, 38:16
**two-and-a-half** [1] - 4:11
**two-and-three-quarter** [1] - 4:11
**type** [2] - 15:2, 18:12
**typically** [1] - 17:24

## U

**U.S** [3] - 1:21, 3:3, 39:8
**ultimate** [2] - 23:6, 32:7
**ultimately** [3] - 8:3, 14:18, 19:17
**unadjudicated** [1] - 25:15
**uncharged** [12] - 17:22, 17:23, 22:6, 22:9, 22:10, 22:18, 23:5, 23:8, 24:11, 24:24, 25:6, 25:15
**uncovers** [1] - 33:20
**under** [8] - 15:24, 15:25, 16:1, 16:5, 25:2, 25:11, 27:16, 30:4
**underlying** [1] - 25:7, 36:12
**understood** [3] - 5:8, 18:1, 28:17
**underwriters** [5] - 3:7, 3:10, 16:18, 27:2, 27:6
**undisclosed** [12] - 4:8, 4:16, 9:9, 9:10, 12:5, 13:11, 15:1, 15:6, 15:7, 17:1, 30:21, 31:8
**unduly** [1] - 37:25
**unfortunate** [1] - 2:4
**uniform** [1] - 30:3
**unimportant** [1] - 7:15
**UNITED** [2] - 1:1, 1:11
**United** [1] - 1:5
**unless** [3] - 7:3, 7:14, 17:24
**unquote** [1] - 29:16
**unsubstantiated** [1] - 19:9
**unvarnished** [1] - 26:23
**up** [11] - 3:20, 3:24, 3:25, 17:12, 18:12, 20:2, 20:7, 20:17, 20:19, 20:21, 39:2
**upwards** [1] - 14:11, 33:21
**urge** [1] - 22:6
**uses** [1] - 29:25
**Usha** [2] - 1:14, 2:16

## V

**value** [1] - 9:2
**Valve** [1] - 39:3
**veracity** [1] - 35:15
**versus** [11] - 6:3, 6:9, 11:17, 11:18, 25:4, 26:1, 28:14, 29:25, 33:25, 34:6
**VIA** [1] - 1:10
**Vicky** [1] - 8:12
**view** [3] - 6:6, 17:17, 34:3
**viewed** [3] - 11:4, 15:17, 37:1
**views** [1] - 33:14
**violating** [1] - 26:10

**violation** [4] - 23:12, 24:1, 24:2, 36:8
**Virtus** [4] - 17:23, 22:7, 22:17, 26:9

## W

**wait** [2] - 18:11, 35:2
**waiting** [1] - 20:20
**Wal** [5] - 24:2, 24:3, 24:5, 24:9, 24:10
**Wal-Mart** [3] - 24:3, 24:5, 24:10
**Wal-Mart's** [2] - 24:2, 24:9
**wants** [1] - 11:10
**WARDWELL** [1] - 1:20
**warning** [1] - 10:2
**waste** [1] - 32:23
**water** [1] - 25:21
**weakness** [1] - 10:6
**website** [1] - 31:1
**week** [1] - 38:11
**well-accepted** [1] - 11:15
**whatsoever** [1] - 40:13
**whole** [1] - 32:9
**willfully** [1] - 26:10
**willing** [1] - 20:20
**Wilson** [2] - 1:23, 3:3
**win** [1] - 34:9
**Winkler** [3] - 29:15, 29:20, 38:2
**withdrawing** [1] - 3:15
**words** [2] - 13:14, 22:23
**worse** [1] - 20:1
**worth** [1] - 23:17
**wrongdoing** [12] - 17:22, 17:23, 22:6, 22:9, 22:10, 22:13, 22:19, 23:5, 23:8, 24:11, 24:25, 25:16

## X

**XP** [14] - 1:4, 1:21, 2:8, 3:3, 4:25, 10:25, 22:12, 22:24, 24:15, 26:19, 29:1, 29:4, 37:16, 38:17
**XP's** [2] - 10:3, 31:1
**XPI** [1] - 15:13

## Y

**Yards** [1] - 1:24
**YORK** [1] - 1:1
**York** [7] - 1:5, 1:18, 1:21, 1:25

## Z

**Ziff** [1] - 25:4

VB          OCR          CRR